*J. S. Harvey*, for appellant.

*A. G. Porter*, *B. Harrison*, and *W. P. Fishback*, for appellee.

———————————————

### Noakes and Others *v.* Morey and Another.

VERDICT.—*Special Finding.—Interrogatories.*—An interrogatory propounded to a jury for the purpose of obtaining a special finding upon a particular question of fact, which presents alternative and antagonistic propositions, in such form that an affirmative answer to one excludes the truth of the other, is not double, so as to require a separate answer to each branch of it.

SAME.—*Defective Special Finding.*—If a special finding be equivocal, or not fully responsive to the interrogatory, either party may demand that the verdict be not received, and that the jury be kept together and directed to answer fully; but after the verdict has been received without objection, and the jury discharged, it is error to strike from the record such special finding, pertinent to the case, and render judgment on the residue of the finding.

CONTRACT—*Sale of Goods.—Earnest.—Part Payment.*—The parties to a contract for the sale of goods to be delivered at a future time, the price of which was more than fifty dollars, each delivered to the agent of both a check payable to said agent, as a forfeiture; the money, on failure of either party, to be paid over by the agent to the other.

*Held*, that nothing was given in earnest to bind the bargain, or in part payment for the goods.

SAME.—*Memorandum.*—A memorandum made by the agent of both parties and signed by him in his own name, in the absence of the parties, not by their agreement, but at his own instance and for his own use and convenience, was not sufficient to take the case out of the statute of frauds.

APPEAL from the Tippecanoe Civil Circuit Court.

ELLIOTT, J.—This was a suit by Morey and Godman against Noakes, Graves, and Snyder, to recover damages for a breach of contract. The complaint was in two paragraphs, founded on separate contracts. On the first the appellees recovered a judgment, but the appellants, the de-

fendants below, had judgment on the second, and hence no question is presented by them on that paragraph.

It is alleged in the first paragraph, that on the 29th day of May, 1867, the plaintiffs, who were partners in buying and selling grain, bargained and sold to the defendants six thousand bushels of number one corn, for one dollar and eight cents per bushel, to be delivered on the first day of the ensuing July, at Toledo, in the State of Ohio, in store, in care of Young and Backus; that at the time of the sale "the plaintiffs and defendants mutually agreed and appointed one Consider Tinkler as their mutual agent to make a memorandum of said bargain and sale, and sign the same in his own name in behalf of said plaintiffs and defendants;" that Tinkler thereupon made such memorandum, using therein the name of "Stokes" for "Noakes," which is as follows, viz:—"May 29, '67. Morey sells Nate Stokes 6,000 bushels corn in store at Toledo, Ohio, at 108c per bushel, to be No. 1, and delivered July 1st, 1867, care Young & Buckus.

C. TINKLER."

That contemporaneously with the making of the sale and memorandum thereof, the defendants delivered to Tinkler in part payment to bind the contract, a check drawn by said Noakes on funds in the Union National Bank, in the county of Tippecanoe, Indiana, to be held by him for the use of the plaintiffs; that the defendants afterwards, and before the 1st of July, 1867, "stopped the payment of said check, and that the same, although of value when drawn, was afterwards rendered valueless by the act of said defendants;" that on the 1st day of July, 1867, the plaintiffs were in Toledo, Ohio, ready and willing to deliver said corn, and then and there tendered and offered to deliver the same to Young and Backus, as required by said contract, but they refused to receive it; that such corn was only worth seventy cents per bushel at Toledo, Ohio, on the 1st day of July, 1867; that by the custom of grain dealers at Toledo, of which the defendants had notice, they became liable to the plaintiffs for the difference between the contract price

of the corn and the market value thereof at the time and place of delivery, &c.

The defendants answered by a general denial, and by a special paragraph setting up a counter claim, but as no question is presented in this court upon the latter, it need not be further noticed. The jury returned a general verdict for the plaintiffs, and assessed their damages on the first paragraph of the complaint at six hundred dollars. Special findings upon particular questions of fact, in answer to interrogatories propounded at the request of each of the parties, were also returned. The interrogatories propounded at the plaintiffs' instance and the answers thereto, so far as they related to the issues on the first pargraph of the complaint, are as follows:

"1. Who drew the check delivered to Tinkler, in the first paragraph mentioned, if one was delivered?"—"Noakes."

"3. Were the checks, or either of them, and if only one, which,. mentioned in the first interrogatory, drawn on the joint funds of all the defendants, or on the funds of the defendant Noakes?"—"On the joint funds of the defendants."

"4. Did the plaintiffs know that the check, in the first paragraph of the complaint mentioned, was drawn on the joint funds of all the defendants, at the date of the contract, if any was so drawn?"—" No."

"6. Was not the memorandum made by C. Tinkler, made by the agreement of the parties?"—" No."

"7. Was not the $600 check of said Noakes delivered to said Tinkler as margin, or payment, on said 6,000 bushel contract?"—" No."

"9. Were not Young and Backus the agents of the defendants at Toledo, Ohio?"—" Yes."

"10. Were not said agents acquainted with the custom of grain dealers at Toledo, Ohio, on and prior to the 1st July, 1867?"—" Yes."

"11. Did not the plaintiffs tender said 6,000 bushels ✱✱✱ of corn, of the quality mentioned in said contract, on the

1st of July, 1867, to Young and Backus, defendants' agents at Toledo, Ohio, according to the custom of grain dealers?"—"Yes."

The interrogatories propounded at the request of the appellants, with their answers, are as follows:

"1. Did Consider Tinkler, at the time of the alleged sale by the plaintiffs to the defendants of 6,000 bushels of corn, to be delivered in Toledo, Ohio, on the 1st day of July, 1867, make a memorandum in writing of said sale?"—"Yes."

"2. Did said Tinkler sign said memorandum, in his own name by the style of C. Tinkler, at the time of making said sale, and in the presence of the parties thereto; or did he sign it afterwards at his own office and in their absence?"—"At his own office and in their absence."

"3. Did said Tinkler make said memorandum by the authority of the defendants, for the purpose of binding them and the plaintiffs; or did he make it for his own use and convenience?"—"For his own use and convenience."

"4 Did the defendants authorize said Tinkler to sign said memorandum for them by his own name; or did he sign it at his own instance?"—"At his own instance."

"5. Did the plaintiffs, at the time of making said alleged contract for the sale of 6,000 bushels of corn, deliver to said Tinkler their check, payable to him in the sum of $600; and did the defendants at the same time also deliver to said Tinkler their check payable to him in the like sum of $600?"—"Yes."

"6. Was it not intended by the plaintiffs and defendants, at the time they delivered said checks to said Tinkler (if you find that such checks were delivered), that, in case either party should fail to perform said contract, the money should be paid over by said Tinkler to the other party?"—"Yes."

"7. Has payment been made, either in whole or in part, on either one of said checks?"—"No."

"8. Was the price of said 6,000 bushels of corn in said alleged contract more than fifty dollars?"—"Yes."

" 9. Was any part of said 6,000 bushels of corn ever received by the defendants?"—"No."

"10. Was anything ever given or delivered by the defendants to the plaintiffs or their agent, on said sale of 6,000 bushels of corn, other than the said check given by the defendants to Tinkler?"—"No."

"20. Did the plaintiffs on the 1st day of July, 1867, tender to the defendants or their agents at Toledo, Ohio, any actual corn, or did they tender only written obligations on third persons calling for corn?"—"Obligations on third persons only."

"21. Were the checks of Noakes, the one for $600 and the other for $500, given respectively in the character of purchaser of corn, as alleged in the complaint?"—"$600 as forfeiture, $500 as purchaser."

The appellants thereupon moved the court for judgment in their favor on the special findings of the jury, over and notwithstanding the general verdict for the plaintiffs, which motion the court overruled, and then, on the plaintiffs' motion, struck out the special findings of the jury in answer to interrogatories numbered two, three, and four, propounded at the request of the appellants, and rendered judgment for the plaintiffs for six hundred dollars, on the general verdict. To these several rulings the appellants excepted. The errors assigned are: 1. The court erred in overruling the appellants' motion for judgment in their favor on the special findings of the jury, over, and notwithstanding their general verdict for the plaintiffs. 2. The court erred in striking out the special findings of the jury in answer to interrogatories two, three, and four, submitted to them at the instance of the appellants. '

The last assignment will be first considered. The reasons, stated in a bill of exceptions, for the action of the court in striking out the answers returned by the jury to the interrogatories named, are, that said interrogatories "two, three, and four, were double, and that the answers thereto

did not ascertain the facts as to one branch of each of said questions."

We cannot but regret to be compelled, as we are, to examine these questions without the aid of any argument on the part of the appellees. The amount involved is certainly sufficiently large to interest them in an effort to sustain the judgment of the court below in their favor.

We do not think the second and fourth interrogatories are double, so as to require a separate answer to each branch. Each of these interrogatories contains two distinct and antagonistic propositions, presented in the alternative, both of which could not be true, one of which is in accordance with the claim of the appellees, the other in opposition to · it. Both are presented in an affirmative form, so that an affirmative answer to one excludes the truth of the other. Take the fourth as an illustration. "Did the defendants authorize Tinkler to sign said memorandum for them by his own name" (it is alleged in the complaint that they did so authorize him); "or did he sign it at his own instance?" The answer is, "At his own instance." The plain meaning of the answer is, that Tinkler signed the memorandum as his own voluntary act, and not by authority of the appellants, and was a full answer to the whole interrogatory. These remarks apply with equal force to the third interrogatory and answer. It is possible that a construction may be given to the second interrogatory, by which it would present two separate questions, but we think it a fair construction of its language, to say that it, like the third and fourth, only presents alternative propositions. The jury, in answer to the first interrogatory of the appellants, found that Tinkler, at the time of the sale, made a written memorandum of it, and there seems to have been no controversy that his own name only was signed to it. It is so alleged in the complaint. But the real question in controversy was, did he make and sign the memorandum by the authority and as the agent of the defendants below; or, on the contrary, was it a mere voluntary act of his own, and without

such authority? It is to that question that the second, third, and fourth interrogatories were directed, and by the answers to them it is made clear that the memorandum was not made by Tinkler by the authority of the appellants.

It is said that the interrogatories were deemed double under the authority of the case of *Rosser* v. *Barnes*, 16 Ind. 502. But there is no analogy between the question in that case and the case under consideration. There the question propounded was, whether one Dodd, on a day named, had transferred to Rosser a large amount of personal property, for the purpose of hindering, delaying, and defrauding his creditors, and if so, whether Rosser was cognizant of such fraud. Such an interrogatory evidently contains two distinct questions, each requiring a separate answer. But if the answers in the case before us were defective because they failed to answer the interrogatories fully, still we think it would be error for the court to strike them from the record after the jury was discharged. We know of no authority for such a practice. It was said by the court in *Rosser* v. *Barnes*, *supra*, that it is the duty of the court to see that interrogatories, when asked, are properly framed, and presented to the jury, " and that they are definitely and completely answered, or ignored, if such answer is insisted upon, before the finding is accepted. If they are not thus answered, the court cannot give full weight to the answers in deciding the cause."

If, in this case, the answers to the interrogatories were deemed equivocal, or as not being fully responsive to the questions asked, it was the province of either party to demand that the verdict should not be received, and that the jury should be kept together, and directed to answer the questions fully; but after the verdict was received by the court, without objection, and the jury discharged, it was error for the court to strike out one portion of the finding, pertinent to the case, and render judgment on the residue. Imperfect or indefinite special findings in such cases may not be sufficient to control a general verdict, or may,

in the opinion of the court, in a given case, justify the granting of a new trial; but they form a part of the record, and must be considered, at least for what they are worth, in the determination of the question as to what the judgment should be, or on a motion for a new trial, when the special findings form the basis of such motion, and cannot be got rid of by a motion to strike them from the record.

But whether the judgment should be reversed for this error must depend upon the decision of another question, namely: are the special findings, including the answers to the second, third, and fourth interrogatories of the appellants, so stricken out by the court, so inconsistent with the general verdict for the appellees, as to control the latter, and entitle the appellants to a judgment? And this is the question presented by the first error assigned.

We have already said in this opinion that the answers of the jury to the second, third, and fourth interrogatories asked by the appellants render it clear that the memorandum made by Tinkler was not made by the authority of the appellants. The answer to the sixth question of the appellees is to the same effect. This being the only written memorandum claimed to have been made, it follows that there was no note or memorandum of the bargain in writing, signed by the appellants, or by any other person by their authority, to take the case out of the statute of frauds. And the answers of the jury to the seventh interrogatory of the appellees, and to the sixth, tenth, and twenty-first of those asked by the appellants, make it equally clear that nothing was given in earnest to bind the bargain, or in part payment for the corn. We need not here decide whether the check for six hundred dollars could constitute such part payment, as it is shown by the special finding of the jury that it was not so intended by the parties. It was, then, a parol contract for the sale of goods, to be delivered at a future time, the price of which exceeded fifty dollars; and as there was no part delivery,

nor earnest to bind the bargain, nor part payment, it was obnoxious to the seventh section of the statute of frauds, and no action could be maintained upon it. The appellants were therefore entitled to a judgment on the special findings of the jury, notwithstanding the general verdict for the appellees.

The appellees have assigned cross errors on the action of the court in rendering a judgment for the appellants on the second paragraph of the complaint, notwithstanding there was a general verdict for the appellees; but no abstract of that portion of the record has been furnished by either party, and as the appellees have failed to furnish any argument upon the cross errors, we do not examine them.

The judgment for the appellees on the first paragraph of the complaint is reversed and set aside, with costs, and the cause remanded, with instructions to the Civil Circuit Court to render judgment for the appellants for costs on that paragraph of the complaint, on the special findings of the jury.

*R. P. Davidson* and *W. D. Wallace*, for appellants.

*W. C. Wilson, S. A. Huff,* and *B. W. Langdon,* for appellees.