No. 8104.

WILLIAMSON ET AL. *v.* YINGLING ET AL.

COMPLAINT.—A complaint need not anticipate and negative defences.

WATERCOURSE.—*Obstructing Flow of Water.*—*Negligence.*—A complaint for obstructing the flow of water from a mill, etc., is not a suit for negligence, and the doctrine of contributory negligence has no application to it.

SAME.—*Mill-Dam.*— *License.*—*Revocation.* — *Pleading.*—*Reply.*—When, to a complaint for causing backwater to the plaintiff's mill by erecting a dam on the stream below, the defendant pleaded a license and the expenditure of money on the faith thereof, a reply by plaintiff of a revocation of the license before the expenditure was made is sufficient.

SAME.—*Mill-Owners.*—*Obstructing Flow of Water.*—Where a party, owning two mills and sites on the same stream, the dam of the lower one injuriously obstructing the flow of water from the one above, conveys the one above absolutely and without limitations, it is doubtful whether he retains the right to continue the existing obstruction—and it is certain that he can not increase it.

SAME.— *Witness.*—*Experts.*—*Backwater.*—A witness, not an expert, may testify, if he knows the fact, that backwater made by the defendant diminishes the power of the plaintiff's water wheel.

CONVEYANCE.—*Conditions and Limitations.*—A party is bound by the conditions and limitations in the conveyance under which he claims title, and such limitations enure to parties other than the grantor, for whose benefit they were made.

INSTRUCTIONS.—Instructions which are substantially embodied in such as are given may be refused.

SAME.—*Practice.*—Where there is no evidence to support a defence, the court may instruct the jury to disregard it.

INTERROGATORIES TO JURY.—*Answers.*—It is not error to instruct the jury concerning interrogatories sent to them, that if they could not make definite answers to any, because the evidence did not furnish the information, they could answer to that effect, and in any event no question can be made thereon when the jury do answer definitely.

SAME.— *Verdict.*—*Practice.*—It is only where the answers by the jury to interrogatories might control the general verdict, that the court need require them to be answered, or take any notice of them whatever.

SAME.— *Venire de Novo.*—A motion for a *venire de novo* raises no question concerning the sufficiency of the answers of the jury to interrogatories.

From the Delaware Circuit Court.

*C. E. Shipley, W. March, J. N. Templer, R. S. Gregory, W. Brotherton, T. A. Hendricks, A. W. Hendricks, C. Baker* and *O. B. Hord,* for appellants.

*J. S. Buckles* and *J. W. Ryan,* for appellees.

FRANKLIN, C.—Appellees, as owners of a mill and factory, sued appellants, as owners of another mill, for damages, on account of backing water upon their machinery.   Both mills were situate on Buck Creek, about two-thirds of a mile apart, near Yorktown, in Delaware county, Indiana; appellees owning the upper mill and factory, and appellants the lower mill.

Separate demurrers were filed and overruled to the complaint.   Answer in seven paragraphs filed; demurrers overruled to 2d, 3d, 4th and 5th.   Reply filed in four paragraphs; demurrers overruled to the 2d, 3d and 4th.   Trial by jury; answers to interrogatories, and a general verdict for appellees.

Various motions, and finally a motion for a new trial, were overruled, and judgment rendered for appellees for $2,500.

Proper exceptions were reserved to all the foregoing rulings, and the cause was appealed to this court.

Appellants have assigned in this court fourteen specifications as error, which will be noted as they are considered.

The facts in the case are as follows:   The upper mill and factory was erected about fifteen years before the lower mill; that at and prior to the 5th day of June, 1854, Oliver H. Smith owned all the lands upon which both of the mills were situated; he then deeded the upper mill and factory, with 160

acres of land, upon which the upper mill was situated, to his son Marcus C. Smith, giving a description of the land, and concluding with a clause that it contained "all the privileges, to have and to hold the same," etc.; that Marcus C. Smith, on the 16th day of April, 1856, by like deed, conveyed the same premises to Williams Petty, who, by like deed, conveyed the same premises to appellees on the 13th day of February, 1865.

On the 15th day of April, 1857, Oliver H. Smith conveyed a certain tract of land, describing it, and embracing the premises of the lower mill, to his son Marcus C. Smith and one Jacob H. Koontz. The deed concluding with the words: "Including the entire mill property within said boundaries, and including all the right of the said party of the first part to run and keep up the head-race of the mill through and over the tanyard lot as stipulated and reserved in the original deed of conveyance of the same of the party of the first part, and with the right to keep up and maintain the mill-dam at its present height, so as not to back the water on the wheel of the mills of Williams Petty above on the creek."

On December 23d, 1858, Marcus C. Smith, by like deed, conveyed his interest in the premises to said Koontz, who, on the 11th day of April, 1865, by like deed, conveyed said premises to Jesse H. Williamson and J. W. Edmunds; on the 15th day of August, 1868, Edmunds, by like deed, conveyed his half thereof to said Williamson, who, on the 1st day of June, 1875, by like deed, conveyed the whole of said premises to Mays & Makepeace, who, on the 8th day of September, 1875, conveyed the whole of said premises, by like deed, to appellant Julia Williamson, who is the wife of Jesse H. Williamson, her co-appellant.

The lower dam was washed out in the years 1865 and 1875, and appellees claim that, when it was rebuilt, it was each time raised higher than it was when so sold by the said Oliver H. Smith, and so high as to back the water upon their wheel from fifteen to twenty-four inches.

The complaint alleges that appellees are the owners, and

have been ever since the year 1865, in fee of the premises of the upper mill and factory property, giving a description of it, which appellees and their grantors had used for over thirty years; that, before the committing of the grievances therein named, they had realized from the use of the same, the sum of $5,000 per year; that, soon after said appellees purchased said upper mill property, said appellants raised the dam of the lower mill higher than it was before, and to such a height as to back the water upon the wheel of said appellees' mill and factory, so as to destroy its power and to render appellees' property useless and of no value. Appellees then, to avoid trouble, procured a new wheel, which could be set in said mill to run higher than the one rendered useless by the backing of water aforesaid, and put the same into their mill. And appellants again raised their dam, so as to back an additional height of water into appellees' mill and drown their said wheel; that appellees objected to and remonstrated with them when they were so raising their said dam, but they, disregarding said remonstrances, put up their said dam, and backed the water into appellees' mill and on their wheel, so as to completely destroy the power thereof, and render their mill useless; to their damage $10,000, etc.

Under the 1st and 2d specifications of the assignment of errors, it is claimed that the court erred in overruling the separate demurrers to the complaint. The objections to this complaint are, that it does not aver that the acts complained of " were done, made, caused, suffered or procured by the defendants, or either of them, without right, or leave, or license, or authority, or in any manner wrongful, or that appellees were not in fault."

License or authority is a good defence in an answer, but need not be negatived in a complaint; but this complaint does negative license, by averring that, at the time appellants raised their dam to such increased height, they objected to and remonstrated with them against such raising, and the so raising the dam under such objections makes the raising wrongful.

Williamson *et al. v.* Yingling *et al.*

The doctrine of contributory negligence is not applicable to this class of cases. The appellants were not sued for negligence, but for wrongful acts. *Shipler* v. *Isenhower*, 27 Ind. 36.

The complaint is uncertain as to the time when appellants are charged with last raising their dam; but as no motion was made to make it more specific, this objection can not be raised by demurrer, unless the complaint be so uncertain as not to state intelligibly a substantial, good cause of action. *Snowden* v. *Wilas*, 19 Ind. 10.

We think this complaint intelligibly states a substantial good cause of action, and the court committed no error in overruling the demurrers to it.

The next errors complained of are the overruling of the demurrers to the 2d reply to the 2d paragraph of the answer. The 2d paragraph of the answer alleges a license from Petty and the appellees, and the expenditure of money upon the faith thereof. The reply alleges that, before the raising of the dam as complained of, said license was revoked by both Petty, while he owned the property, and appellees, after they became owners of the property; and that said revocation was before the expenditure of said $1,000, or any part thereof, upon the raising of said dam as complained of. We think this sufficiently avers a revocation of the license at a time when it could be revoked. There was no error in overruling the demurrers to it.

The 5th and 6th errors assigned are the overruling of the demurrers to the 3d paragraph of the reply. This paragraph of the reply was to the 3d, 4th and 5th paragraphs of the answer.

The 3d paragraph of the answer alleged a license from Petty to Koontz for the erection of the dam to the height it was at the commencement of the suit and at the time of the injuries complained of and the expenditure by Koontz of $1,000, in the erection of the dam, but does not allege that Petty was the owner of the upper mill when the license was so given. The 4th paragraph of the answer alleges a license from appellees to Edmunds and Williamson, and in reliance

thereon they expended a thousand dollars in the erection and construction of their dam.   The 5th paragraph of the answer avers a like license to Mays & Makepeace, and the expenditure of $1,000, upon the faith thereof.

This 3d paragraph of the reply alleges that ever since the 13th day of February, 1865, appellees have been the owners and occupants of said land, mill and mill-site described in the complaint; that after said appellees had so become the owners and occupants of said mill, and mill-site, and before said appellants had invested said sum of money in increasing the height of their said dam, the appellees in all things revoked said leave and license.   Appellees only complained of the increased height; appellants could only legitimately answer as to the increased height of their dam, and the reply was sufficient as a revocation of the license for an increased height of the dam.   We think the court did not err in overruling the demurrer to the 3d paragraph of the reply.

The 7th and 8th errors assigned are the overruling of the demurrers to the 5th paragraph of the reply.   This was also in reply to the 2d, 3d, 4th and 5th paragraphs of the answer, and was sufficient for the reason given in relation to the 3d paragraph of the reply.

Appellants' counsel next call our attention to the 13th and 14th errors assigned, which are the overruling of appellants' separate motions for a new trial.   And we only notice such as are discussed in their brief.   The others are considered as waived.

The 4th and 5th causes for a new trial are the same—excessive damages.   In the light of the evidence, we can not say that the damages were clearly excessive—that was a question for the jury to determine, and unless they had clearly erred this court will not disturb the verdict upon the weight of the evidence upon that question.

The 18th reason for a new trial was based upon the refusal of the court to give the instructions asked by the appellants.

The 1st, 2d and 3d instructions asked were fully given by

the court in its general charge, except the last clause of the 1st one, which was not correct and ought not to have been given. If the property was controlled by her agent, she was as much liable as though she had controlled it herself.

There was no error in not repeating the other parts of these instructions.

The 4th instruction, refused, reads as follows: " The deed read in evidence, bearing date of April 15th, 1857, from O. H. Smith to M. C. Smith and J. H. Koontz, for the premises now held by the defendants, was a deed to which the plaintiffs were not and are not either parties or privies, and they are not entitled to any benefit or privilege under or in virtue of any stipulations contained in it."

The deed referred to in the instruction is the conveyance by Oliver H. Smith, the original owner, to the remote grantors of the defendants M. C. Smith and J. H. Koontz. The deed, after the description by metes and bounds of the premises conveyed, contains this language: " And with the right to keep up and maintain the mill-dam at its present height so as not to back the water on the wheel of the mills of Williams Petty above on the creek." Petty was the remote grantor of appellees, and owned the upper mill at the date of this deed. Whatever rights Oliver H. Smith may have had at that time to raise the dam at the lower mill any higher, is unimportant; he reserved and limited the right conveyed to appellants' remote grantors to the then height of the dam so as not to flow the water back upon the wheel of Mr. Petty's mill above on the creek. And this reservation extended through all the subsequent conveyances down to appellants.

It was a reservation and limitation that Mr. Smith had a right to make, and was for the benefit of the owner of the upper mill to whom he had formerly conveyed the premises, and which enured and extended to the benefit of Mr. Petty's privies, and gave them a right of action for damages resulting from a breach of the limitation by any of the grantees or

their privies under the deed made by Mr. Smith to the lower
mill and the premises.    The original purchasers from Mr.
Smith, with all the succeeding purchasers of the premises of
the lower mill, accepted their respective deeds with this lim-
itation therein contained, and were respectively bound by it.

The 6th instruction is not applicable to the evidence and
facts in the case.

The instructions asked and refused are too long to be copied
entire in this opinion.    They embrace thirteen pages of closely
written matter, and it would be unprofitable to encumber the
reports with them.    The remaining eight were all based upon
the theory that as O. H. Smith  originally owned  both mills,
he had a right to apportion the fall of the creek and regulate
the height of each dam as he desired, and when he sold the
upper mill first, the purchaser took it subject to the then height
of the lower dam and all the surrounding conditions of the
upper mill; and that appellees, as his grantees, took and hold
the upper mill under like conditions; and that appellants, as
subsequent purchasers, have all the rights that O. H. Smith
had in the lower mill after he had sold the upper mill; and
that they were only liable for injuries resulting to appellees
from appellants having increased the height of the dam of the
lower mill or maintained it at a greater height than it was at
the time the upper mill was sold by O. H. Smith.

This theory might appropriately be questioned.    Smith
conveyed the upper mill for the purpose of being used as
such, and thereby conveyed all the necessary privileges and
appurtenances to its proper use, and did not reserve the right
to back water upon the wheel of the mill, by a dam below or
otherwise, so as to obstruct the proper use of the mill he had
sold, but even if he afterwards possessed such right by the
nature of the surroundings at the time he had conveyed the
upper mill, he conveyed no such right to appellants' remote
grantors.    He expressly reserved from them the right to back
water upon the wheel of the mill above on the creek, and it
is very questionable whether they would have the right to

maintain the dam at the height it was, when Smith first sold the mill above, provided that height backed the water upon the wheel of the upper mill, and certain it is, that he would have no right to raise the dam above that height, provided it backed the water upon the wheel of the upper mill so as to impair its usefulness. But it was only for this increase of height that appellees sued. And the court, in its general instructions to the jury, adopted the above theory of appellants, and, in its 15th instruction, fully stated the law, substantially as asked by appellants, and as we think as much so, if not more favorable to them, than they had a right to ask; and that they have no good reason for complaining at the court's not giving their instructions. *Sherman* v. *Hogland*, 73 Ind. 472.

The court gave the jury twenty-six instructions, very fully stating the law applicable to all the questions involved in the case. There was no error in refusing to give the instructions asked by the appellants.

The 19th reason for a new trial was error in giving each one of the aforesaid twenty-six instructions.

Our attention has been called to the following, as the 10th instruction given to the jury: "There has been no evidence offered tending to support the license pleaded in the 2d, 3d, 4th and 5th paragraphs of the answer, consequently you may disregard the defences attempted to be set up by these paragraphs." We find nothing in the evidence that is in conflict with that instruction; and the law is well settled that where there is no evidence tending to support a defence, the court may instruct the jury to find against such defence. *Hynds* v. *Hays*, 25 Ind. 31; *Steinmetz* v. *Wingate*, 42 Ind. 574; *The State* v. *Banks*, 48 Ind. 197; *Dodge* v. *Gaylord*, 53 Ind. 365.

Our attention is also called to the last clause of the 15th instruction, which reads as follows: "If Oliver H. Smith had so regulated the height of the lower dam as not to flow the water back upon the wheel of the upper mill, then M. C. Smith had a right to hold the same free from overflow; that O. H. Smith had no right to raise the lower dam so as

to back water upon or lessen the power of the upper mill after he had conveyed the same to M. C. Smith, and could not convey such right to any one."

We can see no reasonable objection whatever to this part of the instruction, and think the objection is not well made.

Our attention is next called to the 26th instruction, which reads : " If you can answer these interrogatories definitely, do so, but if you can not do so, because the evidence does not give you the information required, you can then give your reasons for not making definite answers by saying the evidence does not show."

When the answers to interrogatories are not full and responsive, and there has been testimony upon the subject, and the question is material, objection may be made to the discharge of the jury, and it may be sent back to answer further. *Noakes* v. *Morey*, 30 Ind. 103 ; *McElfresh* v. *Guard*, 32 Ind. 408 ; *Maxwell* v. *Boyne*, 36 Ind. 120 ; *Reeves* v. *Plough*, 41 Ind. 204 ; *Bradley* v. *Bradley*, 45 Ind. 67 ; *Rowell* v. *Klein*, 44 Ind. 290.

But we do not understand the rule to require answers, when there is no evidence given to the jury upon the questions propounded. In such cases the jury may answer, that the evidence does not show, or give the necessary information, or there is no evidence upon the question. And such reasons for not answering definitely would be sufficient. It would do no good in such a case to send the jury back to their room for deliberation, they would have nothing to deliberate upon. *Buntin* v. *Rose*, 16 Ind. 209 ; Busk. Prac. 214 ; *Maxwell* v. *Boyne*, *supra*; *Pittsburgh, etc., R. R. Co.* v. *Williams*, 74 Ind. 462.

We think, if the last instruction was erroneous, appellants were not thereby injured, as all the material interrogatories put to the jury, touching the issues, were directly answered by the jury, and these answers would not control the verdict.

Our attention is next called to the overruling of appellants' motion, made at the time the verdict and answers to interrogatories were returned into court by the jury, to have it sent

out and be required to return more specific answers to a portion of the interrogatories, and appellants' objection to receiving the verdict without more specific answers to some of the interrogatories.

The answer to the 1st interrogatory asked by appellees was objected to. The question and answer read as follows: " Question. How long before the establishment of the mill and dam of the defendants was that of the plaintiffs established? Answer. Length of time not disclosed by evidence."

This question and answer had nothing to do with the issues in the case. It was immaterial which dam was erected first, as they both originally belonged to the same remote grantor. And, if the upper dam was erected first, it was wholly immaterial how long it was erected before the lower dam. The answer of any length of time could not in the least affect appellants' rights. Hence they have no right to complain of this answer not being specific and direct enough.

Appellants next complain of the answers to the 1st, 3d and 4th interrogatories asked by them, which read as follows: " What was the height of the dam maintained by Oliver H. Smith, at the place where defendants' dam now is, at the time of the making by said Smith of the deed to Marcus C. Smith, read in evidence, and bearing date of June 5th, 1854? Ans. Not shown by the testimony.

" 3. What was the height of the defendants' dam at the commencement of this suit, that is on December 29th, 1877? Ans. Precise height at that time not shown by the evidence.

" 4. What was the height of the dam maintained by Oliver H. Smith, at the place where defendants' dam now is, at the time of the making by said Smith of the deed to Marcus C. Smith and Jacob H. Koontz read in evidence, and bearing date of April 15th, 1857? Ans. Not shown by the evidence."

The height of the lower dam at the time Smith sold the upper, or sold the lower, or at the time of the bringing of the suit, would not establish its height during the six years preceding the bringing of the suit, nor at the time appellant

Julia purchased it, and from that time to the bringing of the suit. Nor would it tend to prove whether at the time of the bringing of the suit, or any length of time theretofore, appellees' mill wheel had been flooded with backwater.

True, direct answers to these questions might have determined whether appellants' dam was higher at the time of bringing the suit than it was at either of the other times named, but would not have determined its height for the six years immediately preceding the bringing of the suit, for which the damages were claimed, and these answers could not have controlled the verdict.

It is only where the answers to interrogatories would control the verdict, that a judgment will be reversed for the refusal by the court to require the answers to be made. *The Indianapolis; etc., R. R. Co.* v. *Stout,* 53 Ind. 143.

And again we have been unable to find a word of testimony in the evidence as to the actual height of the lower dam at any time. If appellants desired the jury to answer these interrogatories, they ought to have furnished the jury with the evidence upon which they could answer. If they failed to furnish the jury any evidence, they ought not to complain if the jury failed to furnish for them the answers. We think there was no error in overruling appellants' motion and in receiving the verdict without requiring more specific answers to the interrogatories.

Our attention is next called to the 11th error assigned, the overruling of appellants' motion for a *venire de novo.* This motion was based upon the failure of the jury to specifically answer all the interrogatories as heretofore set forth. The motion does not properly raise any question upon these answers, and the court did right in overruling it.

We are also requested to consider the 7th error assigned, an objection to the admissibility of testimony, on the ground that it was immaterial, irrelevant and a mere opinion. Daniel M. Yingling, one of the appellees, while on the witness stand, was asked, on behalf of appellees, to " state what effect the

backwater produced upon the power of plaintiffs' wheel?" Witness answered: "It diminished the power of our wheel." We think that was a question that could be answered, in that general way, by any witness, without requiring him to be an expert.

A further and like objection was made to the following testimony of said witness: "The waste-way was filled up in the spring of 1877; the backwater from that cause continues up to the present time; this backwater diminishes our power from 30 to 40 per cent. out of 100 per cent." This waste-way was in what was connected with and constituted a part of the dam, and the evidence was admissible under the general charge in the complaint of increasing the height of the dam.

The 10th and 12th reasons for a new trial are insufficient, for the reason that the questions therein raised were proper.

We have tried to investigate and decide all the questions presented by appellants in their brief, and we find no available error in this record. The judgment below ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be and it is hereby in all things affirmed, at appellants' costs.

Petition for a rehearing overruled.