No. 15,231.

# THE CLEVELAND, COLUMBUS, CINCINNATI AND INDIANAPOLIS RAILWAY COMPANY v. WYNANT.

SUPREME COURT PRACTICE.—*Verdict.*—*Sufficiency of Evidence to Sustain.*—*Rule as to.*—*Appeal.*—It was never intended by the expression, that "the verdict, on appeal, can not be disturbed in this court when the evidence tends to support it," to hold that less than sufficient legal evidence to establish the issues, or the truth of the verdict or finding, would suffice, excluding from consideration all evidence conflicting therewith. If the evidence, besides merely tending to support the verdict, be such that if every fact proved, and every fact which could be logically and reasonably deduced therefrom, were admitted to be true, and these facts embraced every fact essential to the existence and truth of the verdict, then, and not until then, is the evidence sufficient to support the verdict, no matter how great the contradictions to that evidence.

EVIDENCE.—*On Former Trial.*—*When can be Considered on Subsequent Trial.*—Where, upon a second or subsequent trial, the testimony of a witness on the former trial is supposed to have a bearing on the credibility of his testimony on the pending trial, it is incumbent upon the adverse party to introduce proof of such former testimony, for not until then can such evidence be considered.

SAME.—*Incompetent Evidence.*—*Motion to Strike Out.*—*When not Available Error.*—A party can not sit by and allow improper testimony to go to the jury, and then make the court's refusal to strike it out available error.

INSTRUCTIONS TO JURY.—*Refusal to Give.*—*Embraced in Other Instructions Given.*—*Correct in Part Only.*—It is not error to refuse to give to the jury an instruction correct in point of law and applicable to the evidence, if other instructions be given embracing the substance of the one refused; neither is it error to refuse to give an instruction if a part of it is incorrect, though the most of it be correct.

PLEADING.—*Appeal.*—*Supreme Court Decision.*—*Law of the Case.*—*Ruling on Complaint.*—Where a complaint has once been held good on appeal, it can not thereafter, in another appeal of the same case, be questioned, as the former decision becomes the law of the case on the points ruled on throughout all its subsequent stages.

NEGLIGENCE.—*Injury.*—*Combined Causes.*—*Liability in Damages.*—Where two causes combined result in an injury, one of which was the negligence of the defendant, and the other an accident for which neither the plaintiff nor defendant are responsible, the defendant will be liable in damages.

Cleveland, Columbus, Cincinnati and Indianapolis Ry. Co. v.Wynant.

From the Madison Circuit Court.

*J. T. Dye, W. S. Robinson, J. W. Lovett, W. H. Dye, B. K. Elliott* and *W. F. Elliott*, for appellant.

*H. D. Thompson* and *C. L. Henry*, for appellee.

McCabe, J.—Appellee sued the appellant for a personal injury alleged to have been received by her through the negligence of appellant. Issue, trial by jury, verdict for plaintiff for $3,570, upon which appellee had judgment over a motion for a new trial. The errors assigned are:

*First.* That the court erred in overruling a demurrer to the complaint.

*Second.* In overruling the motion for a new trial.

The complaint was in two paragraphs, and are the same they were when the case was here on two other appeals. Both paragraphs were held good on demurrer on the first appeal. *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160; *Cleveland, etc., R. W. Co.* v. *Wynant*, 114 Ind. 525.

It is settled law that a ruling in a case on a former appeal in this court, is the law of that case on the point ruled throughout all its subsequent stages, until its final determination, and a complaint once held good on one appeal can not thereafter, in another appeal of the same case, be questioned. *Mason* v. *Burk*, 120 Ind. 404; *Board, etc.,* v. *Jameson*, 86 Ind. 154; *Gerber* v. *Friday*, 87 Ind. 366; *Jones* v. *Castor*, 96 Ind. 307.

Therefore, the first assignment of error is not well taken.

Among the reasons for a new trial was that the verdict was not sustained by sufficient evidence. As will be seen, by reference to *Cleveland, etc., R. W. Co.* v. *Wynant, supra*, the plaintiff was injured by the team of horses, which were drawing the vehicle in which she and her husband were

Cleveland, Columbus, Cincinnati and Indianapolis Ry. Co. v.Wynant.

riding, becoming frightened and running away at a place where the highway on which they were traveling crossed the railroad track of the appellant, resulting in the breaking of appellee's arm. The wrong with which the appellant was charged was negligently leaving one of its box cars standing on its track, upon and partially across said highway, which extended twenty-four feet upon said highway, and to the edge of that part then used by the public as their route of travel, which caused the said team of horses and each of them to become frightened and wholly unmanageable and to run away, overturning said wagon, thereby breaking her arm, without fault or negligence on her part.

The appellant insists that the evidence is not sufficient to support the verdict, in that it fails to establish that the box car caused the fright of the horses, and caused them to become unmanageable and run away. On the other hand, it is contended that this court can not reverse the judgment on the evidence alone, if it tends to support the verdict.

It is claimed by appellee's counsel that if the evidence tends to support the verdict, this court can not reverse the judgment on the evidence. This is not strictly correct. That expression has been used in a long line of cases by this court, but evidently not intending that the language should be construed in its literal signification. *Lane* v. *Brown*, 22 Ind. 239; *Shank* v. *State*, 25 Ind. 207; *Atkisson* v. *Martin*, 39 Ind. 242; *Ft. Wayne, etc., R. R. Co.* v. *Grove*, 47 Ind. 133; *Wingate* v. *Neidlinger*, 50 Ind. 520; *Simpson* v. *Payne, Assignee*, 58 Ind. 431; *Durrah* v. *Stillwell*, 59 Ind. 139; *Applegate* v. *Moffitt, Admr.*, 60 Ind. 104; *Evansville, etc., R. R. Co.* v. *Snapp*, 61 Ind. 303; *Ft. Wayne, etc., R. R. Co.* v. *Husselman*, 65 Ind. 73; *Martin* v. *Cauble*, 72 Ind. 67; *Evansville, etc., R. R. Co.* v. *Tipton*, 101 Ind. 197; *Crocker* v. *Hadley,*

102 Ind. 416; *Secor* v. *Skiles*, 106 Ind. 98; *Wabash R. W. Co.* v. *Savage*, 110 Ind. 156; *Cowger* v. *Land*, 112 Ind. 263; *Continental Life Ins. Co.* v. *Young*, 113 Ind. 159; *Isler* v. *Bland*, 117 Ind. 457.

It seems quite unreasonable to say that if the evidence does nothing more than tend to support the verdict, this court can not disturb it. Evidence is always admissible that tends to support or prove the issue on the part of the party offering it, however slight that tendency may be, and it is never required as a condition to the introduction of offered evidence that it must be sufficient to establish the issue for the party offering it. If its tendency is in that direction it is competent. There may be several facts essential to establish or prove the issue on behalf of the plaintiff in a given case, and there may have been evidence sufficient to prove one of them only, and yet, on such evidence, a verdict could not stand on appeal in this court, though such evidence tends to support it; while it tends to support the verdict, it is not sufficient, because it does not prove enough, even though wholly uncontradicted.

In *Martin* v. *Cauble*, *supra*, the expression is: "This court will not disturb the finding of the lower court on a disputed question of fact, if there is evidence in the record on which the finding can stand."

In *Butterfield* v. *Trittipo*, 67 Ind. 338 (342), it is said: "While this court may not properly weigh evidence, nor attempt to determine its preponderance either for or against the finding below, it is still the duty of this court, as we understand our duty, to carefully examine the evidence, when the point is made, with a view of ascertaining whether or not there has been a failure of evidence on any material question. When the record discloses such a failure of evidence, it is as much the duty

of this court to reverse the judgment below, on that ground, as for any other error."

In *Swales, Trustee, etc.*, v. *Southard*, 64 Ind. 557, it is said: "There was legal evidence, introduced on the trial, tending, and sufficient, to sustain the verdict of the jury."

In *Grant* v. *Westfall*, 57 Ind. 121 (127), it is said: "The only question * * is whether or not the verdict * * is sustained by sufficient legal evidence. We think it is."

In *Watt, Guar.*, v. *De Haven*, 55 Ind. 128 (130), it is said: "We think that the evidence * * amply sufficient to sustain the finding of the court below; but if we thought otherwise, we would not * * disturb the finding on the mere weight of the evidence."

And, in *Madison, etc.,R. R.Co.*v.*Taffe*, 37 Ind.361(369), it is said: "When there is legal evidence that conduces to prove every material fact in the case, we must," etc.

It was never intended by the expression that "the verdict on appeal can not be disturbed in this court when the evidence tends to support it," to hold that less than sufficient legal evidence to establish the issue or the truth of the verdict or finding, would suffice, excluding from consideration all evidence conflicting therewith. Where the sufficiency of the evidence to support a verdict or finding is brought in question in this court on appeal, the question presented is very much like, and very nearly the same as, that presented by a demurrer to the evidence in the trial court.

In *Willcuts* v. *North Western Life Ins. Co.*, 81 Ind. 300 (303), this court said:

"*First.* A demurrer to the evidence admits all facts of which there is any evidence, and all inferences which can be logically and reasonably drawn from the evidence.

"*Second.* All reasonable and natural inferences which may be drawn from the evidence are admitted, but forced and unnatural ones are not. * * The court will also,

on the argument of the demurrer, make every inference of fact in favor of the party which the jury might, with the least degree of propriety, have inferred; but they ought not to make forced inferences.

"*Third.* In considering the evidence demurred to, the courts will not weigh it to determine whether a fact, of which there is any evidence, has or has not been proved, nor will they consider such evidence as is favorable to the demurring party, if there be any opposing evidence. * * So, if the evidence conflict, the party demurring must admit that of his adversary to be true so far as it conflicts with his own."

In *Stockwell* v. *State, ex rel.,* 101 Ind. 1 (5), it is said: "That upon such demurrer the court will infer from the evidence every conclusion that the jury could reasonably have inferred from it; that all the facts of which there is any evidence are admitted, and all conclusions which can fairly and logically be deduced from those facts."

The only difference in the two cases is, on a demurrer to the evidence the demurring party, by his demurrer, admits the evidence and logical inferences deducible therefrom to be true, in favor of the opposite party; while on appeal the appellant does not admit the evidence and logical inferences therefrom to be true, but this court considers them to be true.

So, too, on an apeal here, the evidence must more than merely tend to support the verdict; it must be such that if every fact proved were admitted to be true, and every fact which could be logically and reasonably deduced therefrom were also admitted to be true, and that these facts embraced every fact essential to the existence and truth of the verdict, then, and not till then, is the evidence sufficient to support the verdict; no matter how great the contradictions to that evidence, if it comes up to the requirement above specified, it is sufficient to sup-

port the verdict in this court on appeal; if it does not, it is not sufficient.

It is very earnestly insisted that the evidence is not sufficient, in that it fails to show that the appellant placed the box car on its track so as to extend into the highway. It is insisted that it might have been the work of intermeddlers. But the fact was proven beyond dispute that the car was there. The inference that somebody put it there was a reasonable and logical one, and one the jury had a right to deduce from the proven fact, that it was there. Which was the more reasonable and logical inference, that appellant put it there, or that some trespasser or intermeddler did so, was purely a question for the jury to determine.

Their verdict indicates that they deemed it more reasonable to infer that the railway company, in the exercise of their dominion over their property, placed the car on their track extending partly into the highway, and left it there, though that involved a wrongful act on appellant's part, than to infer that some stranger was guilty of two wrongs instead of one, namely, wrongfully moving the car from a proper place on the company's track, and wrongfully extending it into the highway. One or the other of these inferences necessarily arises from the proven fact that the car was found extending into the highway, and the inference that the owner placed it there, and while either inference was warranted, the one deduced was the more reasonable one. Therefore the evidence was not insufficient in that respect.

On the first appeal here, the judgment was reversed because the evidence was insufficient to sustain the verdict. The appellee and her husband were the only persons that saw the accident, and the only witnesses in court to the transaction.

From the report of the first trial, it seems that they

both testified that the team got frightened at a noise in or about the box car instead of the car itself. It is held on that appeal that the alleged negligence of leaving the car on the appellant's track protruding into the highway was not sufficient to entitle appellee to recover; that "it must," it was there said, "not only be shown by the evidence that appellee's injuries were occasioned by the appellant's negligence as the proximate cause, without contributory negligence on her part, but substantially in the manner alleged in the complaint. It was charged in each paragraph of the complaint that the appellee's team of horses became frightened at the empty box car, etc. These is no evidence in the record tending to prove that appellee's team became frightened at the car; on the contrary, the evidence utterly refutes the charge that the team took fright at the car.  *  *  *  Appellee testified: 'The horses got scared at the noise that was made. I could not tell what did it, but it was the noise that scared the horses.' Her husband testified to the effect that 'the horses became frightened at a noise in a car on the railroad out in the public highway.'  *  *  We are of opinion, therefore, that there is an absolute failure of evidence to sustain the case made by the material allegations of the complaint."

On the last trial the appellee and her husband, still being the only witnesses to the accident, testified somewhat differently from what they did on the first trial. Her husband on the last trial testified, in part, as follows:

"Well, sir, just as they came right to that road they got frightened at the car and jumped. The horses made a start before the noise was. The noise might have helped it, but I don't know whether it did or not. Well, sir, it was after I drove up the road, and after the horses scared and they made the jump to go, and I thought there was

a noise there that did it, but I was not right certain about it, how it was or where it was." * * *

Speaking of how he testified on the first trial, he testified as follows:

"Q. I will ask you if you didn't state on that trial, in regard to the horses being frightened, in answer to a question, that 'I could not tell what did it, but it was the noise that scared the horses.' A. I don't think I did just that way. Why, I said they got scared at the cars, but there was a noise, I think, and the noise helped it. Q. Well do you say now the noise helped it? A. Well, it might have helped it; I don't know as I could say. * * Of course they frightened at the car. Q. Now, you think the horses scared at both the car and the noise? A. Yes, sir; I always thought that; both helped do it; the car first * * and the other afterward. Q. And if you didn't state in the former examination that 'you found the door was loose and the noise that came from that, from the wind rattling that, scared the horses?' A. I believe I stated that, yes, sir; I thought the noise created by the door helped frighten them. Q. Didn't you say at that time (first trial) it did frighten them? A. I wouldn't like to say; I don't know whether I did or not. Q. And this question, 'what was it you said scared them,' and you answered, "some noise in the car; I thought it was a loose door; that was my own idea, but there was a noise there?' A. Yes, sir, believe I said something about that. Q. Now, I will ask you this question, if you didn't answer this question as follows: 'Your horses didn't scare until they heard that noise?' and you answered: 'When they heard that noise they sprang, and before I knew much about anything else I was laying out?' A. Well, yes sir, I don't know but I did."

And the plaintiff testified as follows: "Q. Did you hear any noise there? A. I don't remember as I did; I don't remember that I did. Q. You don't remember of any noise? A. No, sir, I don't remember of any noise; I know that you said I did at the first trial, and I think about that; that made me think about it. Well, I don't; I can't say that I heard any noise; I can't say it; I have studied about it since. Q. Then, if you did testify to that, you have forgotten it? A. If I did I expect I didn't know what I was testifying about. Q. Didn't you testify on the first trial that 'the horses scared at the noise that was made?' A. I don't remember that I did. Q. Didn't you state on that trial, that 'I could not tell what did it, but it was the noise that scared the horses?' A. I couldn't say; I don't remember of saying it, and I don't remember of there being any noise. Q. Well, you don't remember of testifying to that? A. No, sir; I don't remember of that."

The testimony of these two witnesses becomes very vital on the point as to what frightened the horses, because on the first appeal the law of this case was settled that under the allegations of the complaint as they then were, and still are, if the noise in or about the car frightened the horses and caused them to become unmanageable and run away, the appellee could not recover, and the evidence would be insufficient to sustain the verdict. We are asked to reverse the judgment because the plaintiff's own testimony, on the first trial, refuted the complaint, in that it established that it was the noise in or about the car that frightened the horses, and that she now, as is charged in argument, conveniently forgets that she so testified on the former trial, and conveniently forgets whether there was any noise about the car or not when the horses took fright. If these charges against the appellee were

Cleveland, Columbus, Cincinnati and Indianapolis Ry. Co. v. Wynant.

brought before this court by legitimate proof, and their truth established the falsity of the evidence that tends to support the verdict, they would have a controlling influence on the determination of this appeal; and the appellee would not escape the severe animadversion of this court. But the only means we have of knowing how she testified on the first trial is the report of the case in 100 Ind. 160, *supra*.

In considering the sufficiency of the evidence to sustain the verdict on the last trial, we are restricted and limited to the evidence that went to the jury that returned the verdict now under consideration, and if the appellee's testimony that went to the jury on the first trial was supposed to have a bearing on the credibility of her testimony on the last trial, it was the right of the appellant, and incumbent on it, to have introduced proof of such former testimony on the last trial, and then, and not until then, could the jury on the last trial have considered such former testimony, either for the purpose of affecting the credibility of appellee's testimony on the last trial or as a solemn admission under oath of a party to the record. The jury on the last trial could not consider these matters, because not given to them in evidence. It would be a dangerous and reprehensible practice to allow a jury to base their verdict, in whole or in part, on evidence that was never introduced before them, and it would be equally reprehensible in this court to overthrow their verdict as against evidence, in whole or in part, by considering evidence that was not introduced before the jury. "As the tree falleth, so shall it lie." When a verdict is assailed in this court as unsustained by the evidence, the evidence introduced before the jury can alone be considered, and generally only that part of it that tends to support the verdict.

The appellee, in her direct examination, did not testify

on the vital point as to what it was that frightened the horses. She only testified, on cross-examination by appellant, that she had no recollection of hearing a noise about the car and no recollection of testifying on the first trial that the horses got scared at a noise in or about the car, and that the horses got scared at the car. Therefore, this testimony being called out by appellant not in response to anything she had stated in her chief examination, it could not have discredited anything she testified to on the last trial as to what caused the fright of the horses, because she did not testify, on her chief examination, to anything on that point in the last trial.

It is somewhat different with appellee's only other witness on that point, who was her husband. He admits, on cross-examination, substantially, that he did testify on the former trial that the horses scared at the noise in or about the car. He substantially testified on the last trial that they got scared at both the noise and the car.

Though he bore a near relationship to the appellee, his former testimony could not be used as a declaration or admission of a party, because he was not a party to the suit. The only effect his former testimony could have had was to discredit his last testimony to the effect that the horses did not get scared at the car alone, but scared at both the car and the noise. The jury in the last trial had the benefit of his former testimony and could compare it with his last testimony, and it was their exclusive province to determine how much it weakened or discredited his last testimony. His last testimony was wholly undisputed and uncontradicted, unless it was so contradicted by his former testimony, and it was the duty of the jury to reconcile that conflict if conflict there was, and say by their verdict which of his stories they would believe. It was evident that one or the other of his stories was true. If the first one was true, the jury

must have, under the instructions of the court, found for the appellant, and if the last one, then it became the duty of the jury, as we shall hereafter see, to find as they did. If the circumstances did not justify the jury in finding the last story of the witness, Adam Wynant, true, it was the imperative duty of the trial court, who had equal opportunities and facilities with the jury in weighing the testimony, to promptly grant the motion for a new trial.

By refusing the new trial, the trial judge has said to us that he, having carefully and conscientiously reviewed the evidence, is of opinion that the jury were justified in believing the last story of Mr. Wynant. We have already adverted to the rule that forbids us from disturbing a verdict or finding merely on the weight of the evidence. That rule forbids us to say that the first story of the witness outweighed the last, or that the jury made a mistake in weighing the conflicting stories, if they were conflicting. Again, it is, after all, not much of a conflict. When he testified before, that it was the noise that scared the horses, it was evidently a mere inference of his. That inference might have been correct; but still it was an inference which evidently he deduced from the noise, from the action of the horses, and from all the attendant circumstances and appearances. For instance, one of the grounds for the appellant's motion for a new trial was the refusal of the trial court "to strike out a part of Adam Wynant's testimony, to wit: 'Well, sir, just as they got right to that road they got frightened at the car.'" The ground on which appellant's counsel contend in this court that said testimony ought to have been stricken out is that it is a mere conclusion.

On this point appellant's counsel say: "It is too well settled law to need reference to cases to convince this court that facts must be proven and not conclusions; that

it would have been all right to testify what was there and what was done, but not what did it. This would be depriving the court and the jury of their function.''

We are inclined to concur with this view. And it follows that if it is a conclusion of the witness when he testified that ''the horses got frightened at the car,'' then it is equally a conclusion or inference of his when, on the former trial, he testified that the noise frightened the horses.

There are several reasons why the alleged error in refusing to strike out that testimony was not available. One is, a party can not sit by and permit improper testimony to go to the jury, and then make the court's refusal to strike it out available error. The failure to object at the proper time waives the error, if any was committed. So, then, whether the horses got scared at the car or the noise, or both, was an inference of fact which the jury alone had the right to draw or deduce from the facts proven, and we can not interfere with the inferences of fact they have embraced in the verdict, and which are essential to sustain it unless such inference can not be reasonably and logically drawn or deduced from the evidence. We can not say that the inference can not be reasonably and logically drawn and deduced from the evidence that the horses got frightened at the car, or at the car and noise both; on the contrary, we think such an inference or deduction from the evidence was both reasonable and logical.

Can appellee recover under the complaint, if Adam Wynant's statement was true that the horses got frightened at both the noise and the car? 2 Thompson on Neg. 1085, section 3, says: ''Where an injury is the combined result of the negligence of the defendant, and an accident for which neither the plaintiff nor the defendant is responsible, the defendant must pay damages, unless the

injury would have happened if he had not been negligent.'' To the same effect is 16 Am. and Eng. Encyc. 440, 441, and authorities there cited; *Village of Carterville* v. *Cook*, 129 Ill. 152; *Palmer* v. *Inhabitants of Andover*, 2 Cush. (Mass.) 600.

The appellant was not liable for the consequences of fright caused by the noise, under the averments of the complaint, but was for that caused by the car; neither was it the fault of the appellee, and the injury in this case could not have happened if the car had not been left in the highway. We, therefore, hold that if the evidence showed that the fright was caused both by the car and the noise, the verdict is supported by the evidence.

The next question presented relates to the refusal to instruct the jury as requested by appellant.

The court was, at the proper time, requested to reduce all instructions to writing, and all the instructions are properly in the record, and were given in writing. Among the instructions given by the court, and the only one covering that ground, was the following:

''The defendant had the right to have its cars standing upon the track of its branch railroad at any point or place, except in or upon the right of way of the highway; and if the car, named in the complaint, was placed by said defendant on said railroad, at a point where the same did not obstruct the highway, and said car was afterwards, and by the acts of persons not in the employ of the defendant, moved or placed at the point where it was at the time of the accident, on, or partly on the highway, and said horses took fright at said car, the defendant would not be liable for the damage occasioned by the accident, unless the defendant negligently permitted said car to so remain upon said highway for an unreasonable length of time.''

The defendant, at the proper time, requested the court to instruct the jury as follows:

"The defendant had the right to leave its cars standing upon the track of its branch railroad at any point or place, and if the car named in the complaint was placed by said defendant on said railroad, at a point where the same did not obstruct the highway, and said car was afterwards, and by the acts of persons not in the employ of the defendant, moved or placed at the point where it was at the time of the accident, on, or partly on, the highway, and said horses took fright at said car, the defendant would not be liable for the damage occasioned, unless the defendant negligently permitted said car to so remain upon said highway for an unreasonable length of time, and after notice or knowledge to the defendant, or her employes, that said car was upon said highway."

There was no other instruction given that covered the same ground that this did, unless the one first above set out does. The court refused to give this instruction. It is settled law that the presumption that the trial court acted correctly and legally prevails until the contrary is made to appear affirmatively by the record. Therefore, if the record did not show all the instructions that were given, this court must presume that the trial court had already instructed the jury fully and correctly on the point requested, or, in the absence of the evidence, that the instruction was correctly refused because not applicable to the evidence. But this instruction was applicable to the evidence; yet it was not error to refuse it if the instruction first above set out embraced the substance of the refused instruction. *State, ex rel.*, v. *Sutton*, 99 Ind. 300; *Blizzard* v. *Applegate*, 77 Ind. 516; *Jennings* v. *Howard*, 80 Ind. 214; *Williamson* v. *Yingling*, 80 Ind. 379; *Hauss* v. *Niblack*, 80 Ind. 407; *Pittsburgh, etc., R. W. Co.* v. *Martin*, 82 Ind. 476; *Pittsburgh, etc., R. W.*

Cleveland, Columbus, Cincinnati and Indianapolis Ry. Co. v.Wynant.

*Co.* v. *Sponier,* 85 Ind. 165; *City of Evansville, etc.,* v. *Wilter,* 86 Ind. 414; *Terry* v. *Shively,* 93 Ind. 413; *Louisville, etc., R. W. Co.* v. *White,* 94 Ind. 257; *Atkinson* v. *Dailey,* 107 Ind. 117; *National Benefit Ass'n of Indianapolis* v. *Grauman,* 107 Ind. 288.

Neither was it error to refuse the instruction if a part of it was incorrect, though the most of it was correct.

The majority of the court are of opinion that there was no error in the refusal of the instruction, for both the reasons that the substance of the refused instruction was embraced in the one given above, and that all of the refused instruction was not correct, and was calculated to mislead the jury in that in the fore part of it the jury are told that the appellant "had the right to leave its cars standing upon the track of its branch railroad at any point or place."

The majority of the court are of opinion that the substance of the other part of the instruction was embraced in that given, in that when the jury are told that appellant's liability only arises when they have negligently permitted the car to remain on the highway. an unreasonable length of time, it is thereby implied that appellant had knowledge, or ought to have known, by the exercise of reasonable care, of the existence of the car on its track in the highway. The writer does not concur in either of these views. He is constrained to respectfully differ on those points with his brethren.

The majority of the court are therefore of opinion that there is no error in the record, and the judgment is accordingly affirmed.

Filed June 7, 1893.