### SYLVESTER *v*. STATE OF INDIANA.

[No. 25,622. Filed November 22, 1933.]

W. W. *Sharpless* and P. L. *DeVita,* for appellant.

*Arthur L. Gilliom, Attorney-General,* and *Lesh & Lowther,* for the State.

MYERS, C. J.—Appellant was charged by indictment, tried and convicted by a jury in the court below of vehicle taking. Acts 1921, p. 494, §1; §2460, Burns 1926 (§2449, Baldwin's Ind. Ann. Stat. 1934). From a judgment and sentence as in that act provided, he prosecuted this appeal. The only error in this court assigned and not waived is the overruling of his motion for a new trial.

Appellant, in his brief under the heading "Propositions and Points," challenges the correctness of Instruction No. 10 given by the court on its own motion, and complains of the action of the court in refusing to give his tendered instructions Nos. 4 and 5. None of these instructions were assigned as causes for a new trial. If the trial court erred in either of these matters, it should have been given an opportunity to correct it. That was not done. The instructions are not before us. *Kirts* v. *State* (1926), 198 Ind. 39, 43, 151 N. E. 132; *Smith* v. *State* (1932), 203 Ind. 561, 181 N. E. 519; *Hunt* v. *State* (1921), 191 Ind. 406, 133 N. E. 8; *Cosilito* v. *State* (1925), 197 Ind. 419, 423, 151 N. E. 129; *Kernodle* v. *Gibson* (1887), 114 Ind. 451, 17 N. E. 99.

Appellant's motion for a new trial and his brief on the want of evidence, incidents of the trial, rulings of the court on admission and rejection of evidence, and conduct of the state's attorney during the trial and in the presence of the jury, are the additional subjects earnestly argued in support of his claim of an unfair trial. Regardless of our impression upon the entire record, the judgment must stand or fall as the result of an impartial consideration of the events only on which the jury may have relied for its verdict.

The attorney-general insists that the questions covered by appellant's brief were either not properly saved in the trial court, or the rulings of the court were in his favor. It is true appellant's brief as to certain rulings of the court on the admission and rejection of the evidence does not disclose questions, objections, and rulings with that certainty required by the rules of this court. In some of these instances the record is also deficient.

The record in this case is so exceptional with reference to the events which occurred at the trial that it is impossible to particularize the things or the combination of circumstances justifying the jury's verdict. The persistency of the state's attorney in applying improper and irrelevant questions to witnesses might well support the conclusion that he proceeded with the trial upon the theory that the end justified the means. Such a position on the part of an attorney in the trial of a case cannot be approved. The apparent exhibition of such purpose should be immediately and positively controlled by the trial court. *Martin* v. *Lilly* (1918), 188 Ind. 139, 146, 121 N. E. 443.

The only evidence connecting appellant in any manner with the stolen automobile came from the mouth of a single witness. That witness, the admitted thief, admitted highway robber and admitted deserter from the navy, was, as to each of his material

statements concerning appellant's connection with the stolen car, directly contradicted by himself under oath by disinterested witnesses, by circumstantial evidence, and by physical facts. We are not unmindful of the rule that errors of fact are for the trial court and errors of law are for the court having appellate jurisdiction, nor are we oblivious of the rule that a conviction may be sustained supported only by the evidence of an accomplice, but along with these rules is another, equally as important, requiring substantial evidence to support each fact essential to authorize a finding of guilty. This last rule places the evidence before the court on appeal, not for the purpose of weighing it, or for the purpose of determining the facts when there is actual conflict, but for the purpose of deciding, as a question of law, whether or not there is substantive evidence in support of the required material facts essential to a conviction. It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla. *Sullivan* v. *State* (1927), 200 Ind. 43, 47, 161 N. E. 265; *Cleveland, etc., Ry. Co.* v. *Wynant* (1893), 134 Ind. 681, 686, 34 N. E. 569.

This court, for the past few years, has been confronted, as never before, with convictions resting entirely upon the testimony of criminals of the very worst type, and in a majority of these cases, before final disposition of them on appeal, our attention has been drawn to a petition for a writ of coram nobis based upon affidavits of the person or persons on whose testimony the conviction rested to the effect that their evidence given at the trial was wholly false and supplemented by a statement of alleged facts completely exonerating the defendant from criminality. In the instant case the reverse of the foregoing procedure took place below, but respect for the truth and the effect of an oath on the conscience of such a witness

is the same. Experience admonishes us that convictions resting upon the testimony alone of witnesses of the character the one in this case is shown to have, should be carefully scrutinized, not only by the jury so instructed in this case, but by the court with the view of determining whether there was any substantial evidence before the jury to sustain each issuable fact. We use the word "substantial" as meaning more than "seeming or imaginary." Whether the legally admitted evidence may tend to establish facts from which guilt may be reasonably inferred is a question of law for the trial court when presented by a motion for a peremptory instruction in favor of the defendant at the close of the state's evidence, or at the close of the entire evidence, or by a motion for a new trial for insufficient evidence. The action of the court on any one of these motions may be saved and presented for review on appeal. Furthermore, in the interest of a fair trial, it is important that the trial court should be alert respecting the various activities before the jury during the trial, for the reason, as a general proposition, jurors "are untrained in logical methods of thinking, and are therefore prone to draw illogical and incorrect inferences and conclusions without adequate foundation." Underhill, Criminal Evidence (3d. Ed.), §150. Hence, evidence showing or tending to show that the accused has committed any crime wholly independent of the offense for which he is on trial is forbidden and is generally regarded as error. There are, however, exceptions to this rule, sustained only from necessity of the case. While there is no fixed rule of limitation as to the extent of cross-examination of a defendant who is a witness in his own behalf, yet with respect to questions relating to the commission of distinct offenses, the concensus of opinion of the courts and text writers is to the effect that each case must stand on its own circumstances. Wharton's

Criminal Evidence (10th Ed.), §50. This author, §52, states that "Judgments of conviction have frequently been set aside because of the conduct of counsel for the prosecution in stating and insinuating other offenses than the one for which the accused was on trial, either in argument, or by repeatedly asking rejected questions and commenting upon what the answers would have been if allowed."

In the instant case the alleged offense occurred on May 19, 1926. Appellant was indicted May 21, 1927. He was tried April 16, 1928. Looking to the unquestioned facts, it appears that one Lawrence Mallahan and appellant were arrested and placed in jail on the same day. On that day the sheriff made some investigation with reference of each of these parties' connection with the automobile, and from all of the circumstances of which he then had knowledge, he held Mallahan and released appellant. Mallahan was thereupon indicted by the grand jury of De Kalb county. He was arraigned and entered a plea of guilty in the De Kalb Circuit Court. The judge before pronouncing judgment questioned Mallahan concerning the facts surrounding the alleged theft, *and received answers positively denying that any other person had anything to do with taking or secreting the car.* After two or three weeks in the reformatory, Mallahan, in the presence of a reformatory officer, appellant, and his attorney, omitting the caption and jurat, made the affidavit following:

"I, Lawrence Mallahan, being duly sworn, says he knows J. H. Sylvester; that he, Sylvester, had nothing whatever to do in aiding or assisting me in taking the automobile for which I am serving time; that he Sylvester did not know that I stole the automobile and knew nothing about the fact that the automobile was stolen; that he never secreted it for me nor had any knowledge where the car came from; that the only car that Sylvester had possession of was one that I sold him and told him I was

the owner thereof; that he knew nothing as to where I obtained the car."

At the trial Mallahan testified that in the evening of the day he stole the car, without any previous arrangement, he met appellant in Auburn and they took a walk around town. He remembered no conversation between them other than "We will get a car." After they had separated and appellant had gone on down the street, he observed a car standing at the street curb and took charge of it, drove down the street, picked up appellant and they together drove it to Ft. Wayne and placed it in a private garage on West Main Street, two or three blocks west of the viaduct. Two or three days later they went to Ft. Wayne, obtained the car, drove it out to appellant's farm, eight miles south of Auburn, and left it in his garage; that the car was out there fourteen days, except when appellant drove it to and back from Jackson, Michigan; that on Sunday after Decoration Day, he went out to appellant's home and with appellant, his wife, a Mr. Hensel and his wife, they drove the car to Ft. Wayne. He was let out on West Main Street with the understanding he would meet appellant at the same place on his return after taking the Hensels home, which he did and accompanied appellant to his home and returned with the car to Auburn. The next day he was arrested. The witness admitted that prior to this automobile theft he was convicted of highway robbery, that he held up a man in an automobile and took his money, for which he served a term at the reformatory, and that he was a deserter from the Navy.

Appellant denied any connection with Mallahan on the evening the car was stolen, or that he went with him to Ft. Wayne and assisted in placing the car in a private garage; that he came into possession of the car from Mallahan who brought it out to his farm for the purpose of selling it to him, stating that he was working for a

firm in Ft. Wayne handling used cars; that he wanted $1,800 for the car but they finally agreed upon a price of $1,500, $500 cash on receiving the title and the balance in payments; that while he had the car he drove it to Jackson, Michigan, to Garrett, to Auburn and Ft. Wayne, Indiana; that he had no garage on his farm; that the car, while he had it, was parked in the open along the side of his house and within 60 or 75 feet of the public highway; that it was in plain view of the passing public and was seen and inspected by his neighbors who called at his home. About a month prior to the Auburn transaction, Mallahan was out to appellant's farm trying to sell him a Buick.

Appellant, his wife, a Mr. Hensel and his wife, testified that the Sunday trip to Ft. Wayne was made at the request of Mallahan who said if appellant would take him to Ft. Wayne, the owner of the car was there and he could get the title transferred. He failed to get the title and appellant testified that he told him he did not want the car without the title and he could take it back, which he did. Appellant was a farmer and was shown to have a good reputation. It was shown by the evidence that there was no private garage at Ft. Wayne within the territory mentioned by Mallahan. It was also shown by disinterested witnesses that appellant had no garage or other place on his farm for housing a car; that it was parked along the side of his house near the public road, and that he made no effort to conceal it from the public or from his neighbors.

On cross-examination of appellant's character witnesses and of appellant himself, the form of the questions and the matters of inquiry were, it is claimed, effective to affirm an impression on the jury that the defendant was then or had been charged in certain named state courts and in the Federal court with various crimes wholly independent of the one for which he

was then on trial, with no apparent foundation for such questions. It is true, as contended by the attorney-general, the trial court sustained objections to many of these questions propounded to defendant's character witnesses and thirty-nine objections to such questions asked the defendant.

No good purpose will be subserved by an extended review of the various improper methods employed for the purpose of prejudicing the jury against the defendant. Briefly noticing one of the practices adopted for the purpose of inciting prejudice, the prosecuting attorney, at the close of the state's evidence in chief, in the presence of the jury, stated: "We had a couple of witnesses up by Corunna but unfortunately they are not here. I understand they left the state." This statement, with what followed in reference thereto, together form the basis for criticism and disapproval. The court, however, admonished the jury that they should not consider the remarks of counsel with reference to witnesses leaving the state. Later in the trial it developed that the witnesses to which the state's attorney had reference were Earl McInturff and his wife.

A few of the many questions of like import directed to appellant on cross-examination with reference to the McInturffs may serve to better characterize the trend of the trial. Appellant was asked if he was acquainted with the McInturffs up north of Corunna. He answered that he knew them. Q. When was it you talked to them last? Objection overruled. A. I don't know—I think about a year and a half ago. Q. Mr. Witness, you haven't talked to them in the last week? A. No, sir. Q. Where is McInturff and his wife at now? A. I don't know a thing about it. Q. You have talked to Mr. and Mrs. McInturff within the past two weeks? A. No, sir. Q. Do you know where they are now? A. No, sir. Q. Do you know why they are not here to

testify in this case? Objection sustained. Q. You know, as a matter of fact, they are out of the state and beyond the jurisdiction of the court? Objection sustained. Q. Do you know of any one that has talked to them recently? Objection sustained. Q. What is your business, Mr. Sylvester? A. Farming. Q. How old are you? A. Thirty-three. Q. When were you thirty-three? A. Last October. Q. Were you in the World War? A. No, sir. Q. What? A. No, sir. Q. Why weren't you? Objection sustained. Q. Were you drafted? A. No, sir. Question and answer stricken out. Q. You have been farming as a side issue, have you? A. No, sir. Q. What other business do you follow? A. Nothing. Q. You don't sell liquor? A. No, sir. Q. How long has it been since your house burned down? Objection sustained. Q. Was your house burned down out on your farm? Objection sustained. Q. How long were you down at the penal farm? Objection sustained. Q. Do you know your sister testified before the grand jury that you stored the car on McInturff's place? Objection sustained. On rebuttal, the state called a witness who owned a farm across the road from where the McInturffs lived and with whom he boarded part of the time, and by this witness, over objection, it attempted to show that about a week prior to the trial Sylvester was at the McInturff home, and that the McInturffs left about that time. The witness testified that he did know the man who called on the McInturffs and would not identify Sylvester as the man. The witness denied telling the state's attorney "last night that he thought Sylvester was the man that came up to the house a week ago last Monday morning."

The foregoing cross-examination and the calling of the witness in rebuttal was designed to discredit appellant's testimony before the jury and to give the impression that he was guilty of inducing the McInturffs to depart from the jurisdiction of the

court, an offense defined by §2619, Burns 1926 (§2622, Baldwin's 1934). In our opinion, under the circumstances of this case, the state was bound by appellant's answers to the McInturff questions, and the court, over objection, abused its discretion by permitting an extended questioning of the witness called in rebuttal.

We have read and carefully considered the legitimate evidence in this case, and by giving all of it full faith and effect without doing violence to any, we have reached the conclusion that it fails, as a matter of law, to establish that appellant had any criminal connection with the subject matter of the larceny, and that the verdict was brought about by collateral matters.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.