ANDERSON *v.* STATE OF INDIANA.

[No. 30,609. Filed June 29, 1966. Rehearing
denied September 26, 1966.]

*Forrest Bowman, Jr.,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *David S. Wedding,* Deputy Attorney General, for appellee.

MYERS, J.—This was a criminal action commenced by the State of Indiana by an indictment charging appellant with the felony of first-degree murder. The cause was submitted to a jury on appellant's plea of not guilty which resulted in a verdict that appellant was guilty of manslaughter. Judgment was rendered thereon, and appellant was sentenced to the Indiana State Prison for a term of not less than two years nor more than twenty-one years. Appellant's motion for new trial was overruled by the trial court and this appeal followed.

Evidence most favorable to the State reveals the following: One Dorothy Andrews testified that on July 2, 1962, she was at home alone in her apartment located at 1116 North Capitol Avenue in Indianapolis, Indiana. About 9:00 a.m., the deceased, Charles Willie Mays, came in and sat down. She was lying on a couch not fully clothed. There was a knock on the door, and she recognized the voice of appellant. She put on a blouse and skirt, then let appellant in the room. An argument ensued between appellant and the deceased. Appellant pulled a pistol out of his pocket, walked over to the deceased, began hitting him with the pistol and kicking him.

Appellant then grabbed the deceased around the collar, pulled him out of the chair and pushed him toward the hallway. Deceased half turned and told appellant to put the gun down. At that moment appellant fatally shot the deceased. Dorothy Andrews stated that just before the shooting, appellant stated: "I knew I would have to kill you sooner or later."

Following the shooting, Dorothy Andrews ran across the street to a Tire Company and hid behind some tires because she was scared and felt her life was in danger. She then asked some boys to call the police. When they arrived, she accompanied them to the scene of the shooting.

She further testified that in 1959, appellant came home from the Penitentiary and she became his "girl friend." They lived together until the Spring of 1962, when she left him. Since that time there had been several altercations between appellant and the deceased. In particular, on one occasion at her mother's home in May, 1962, appellant attacked the deceased with a knife, cutting his face and arm. Appellant wanted her to come back to him, but she refused.

The assignment of errors is based upon the overruling of appellant's motion for new trial. The first two grounds therein are that the verdict of the jury was contrary to law and not sustained by sufficient evidence. These are treated together in the Argument section of appellant's brief as Proposition I.

Appellant admits:

"There is ample circumstantial evidence in the record in this cause, obtained from apparently credible witnesses, to establish the corpus delicti of first degree murder or manslaughter. However," he says, "aside from the testimony of the witness, Dorothy Jane Andrews, there is not a scintilla of evidence to implicate the defendant, Alonzo Anderson."

The record shows that Dorothy Andrews admitted on the witness stand that she was thirty years of age, that she had been a prostitute since she was twenty, that she was a narcotic addict since eighteen or nineteen years of age; that she had never been employed since leaving high school, that she had never had a legitimate source of livelihood since high school days in 1949; that she had been convicted of contributing to the delinquency of a minor in 1951; that she had been convicted of prostitution and obscene conduct in 1956 or 1957; that she had been convicted of public intoxication in 1959 and 1962; that she had been arrested for grand larceny in 1959.

Appellant claims that the testimony of Dorothy Andrews is insufficient to sustain a conviction herein; that there is no substantial evidence before this court, as a matter of law, to support the required material facts essential to a convic-

tion; that she was so disreputable that her credibility becomes a question of law for the court. The case of *Sylvester* v. *State* (1933), 205 Ind. 628, 187 N. E. 669, is cited as authority for the proposition.

In that case, the appellant, Sylvester, was tried and convicted by a jury of vehicle taking. The only evidence connecting Sylvester in any manner with the stolen automobile came from the mouth of a single witness. He was an admitted thief, highway robber and deserter from the Navy. Each of his material statements concerning Sylvester was directly contradicted by himself under oath, by disinterested witnesses, by circumstantial evidence and by physical facts. The witness was arrested with Sylvester as an accomplice to the crime, pleaded guilty and was sentenced. At the hearing, before pronouncing judgment, the Judge questioned him about the facts surrounding the alleged theft and received answers positively denying that any other person had anything to do with taking the car. He later signed an affidavit in which he exonerated appellant Sylvester from taking any part in the stealing of the automobile. At Sylvester's trial he changed his tune and implicated him in the taking. This court reversed the conviction of Sylvester partially on the grounds that such testimony as this must be carefully scrutinized, not only by the jury, but by the court, in order to determine whether there was any substantial evidence to sustain each issuable fact as a matter of law; that the legitimate evidence in the case failed as a matter of law to establish that Sylvester had any criminal connection with the larceny, and that the verdict was brought about by "collateral matters." These collateral matters concerned the Prosecutor's attempts to insinuate other offenses than the one for which the accused was on trial by argument or repeatedly asking rejected questions and commenting upon what the answers would have been if allowed.

We do not think the *Sylvester* case is pertinent to the facts in the present case. Here, the witness, Dorothy Andrews,

did not contradict herself under oath regarding any material fact or statement concerning appellant's connection with the shooting. She was not contradicted under oath by any disinterested witnesses. No circumstantial evidence contradicted her story so as to render it unbelievable. There were no physical facts which made her testimony unplausible. She was not alleged or proven to be an accomplice. In spite of her reputation and background, the jury could have found that her evidence was not imaginary, but was substantial.

Appellant took the witness stand in his own behalf and denied that he had ever been in Dorothy Andrews' apartment. It was up to the jury to weigh the conflicting evidence and determine the credibility of the witnesses. *Swift* v. *State* (1961), 242 Ind. 87, 90, 176 N. E. 2d 117. It is not the province of the court to do so when there is substantial evidence. *Wells* v. *State* (1964), 245 Ind. 183, 197 N. E. 2d 301. There was sufficient evidence of probative value to support the verdict of the jury. The testimony of Dorothy Andrews was not so seeming and imaginary as to make it a matter of law for this court to determine because of it being based on mere conjecture, supposition or outright falsehood.

Under sufficiency of the evidence, appellant claims that there is a failure of proof, or a variance in the evidence, in that the indictment charged appellant with killing deceased with *lead* bullets, and the evidence showed he was killed with *copper-coated lead* bullets.

There is no showing here that these claims were prejudicial to the substantial rights of appellant upon the merits. Our Criminal Code provides that no judgment or other proceeding shall be stayed, arrested or affected by any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits. Burns' Ind. Stat., § 9-1127 (Tenth), 1956 Replacement; *Lucas* v. *State* (1918), 187 Ind. 709, 121 N. E. 274. As a variance it was im-

material. *Denton* v. *State* (1965), 246 Ind. 155, 203 N. E. 2d 539. Furthermore, it was waived by failure to object to it during trial. *Roberts* v. *State* (1964), 245 Ind. 185, 197 N. E. 2d 304.

Appellant contends that error was committed in the trial court's refusal to permit Dorothy Andrews to state whether she had been convicted of violating a Municipal Ordinance of the City of Indianapolis commonly known as "lewd woman on the street," being sections 10-908 and 10-924 of the Municipal Ordinances. It is admitted that the exact question involved is one of first impression in Indiana. No authorities are cited which state that convictions under Municipal Ordinances are proper subject-matter for impeachment. Appellant admits that violations of Municipal Ordinances are technically not crimes, but says that "this does not necessarily render the evidence inadmissible."

Appellee says in its brief "* * * it is well settled that violation of municipal ordinances are not crimes and hence are not proper subject matter for impeachment." No authorities are cited for this statement.

We do not believe it makes much difference whether she answered the question or not. She had already admitted she was a prostitute for ten years. The ordinances involved pertained to prostitutes and solicitation as such. The purpose of the cross-examination was to question her credibility and show her depravity. This had already been brought out on direct examination and cross-examination. In the latter she admitted to having been convicted of prostitution in Cleveland, Ohio, in 1953. There was no need to belabor the witness with violations of Municipal Ordinances when she admitted to violating laws which are misdemeanors on the statute books pertaining to the same subject-matter.

Appellant charges that the trial court erred in making capricious, unreasonable and unnecessary remarks during the trial. Specification No. 5 of the motion for new trial states:

"Error of law in that the Trial Judge capriciously, unreasonably and unnecessarily admonished defense counsel on several occasions in the presence of the Jury which were prejudicial to the defendant, one of which occasions is set forth in Specification 4."

Specification 4 sets forth questions and answers pertaining to the admission in evidence of the "lewd woman" city ordinance. Appellant's attorney had twice asked Dorothy Andrews whether she had been arrested and convicted of being a lewd woman on the street. The first question pertained to the date of November 19, 1956, to which an objection was sustained. The second question pertained to the date of January 18, 1958, to which an objection was sustained. The court, upon the request of the Prosecutor, admonished appellant's attorney not to raise such questions thereafter. The attorney said:

"I am admonished, and I wish to make one statement. We have a written decision that City Ordinances are now appealed to the Criminal Court, and not to the City Court."

The Court:

"That is correct, and the admonishment stands."

We cannot see, nor has it been pointed out, how appellant was harmed substantially by the court's remarks. The attorney admitted he was admonished and did not object to the admonishment. Therefore, we give no consideration to this contention.

Finally, it is claimed that the trial court erred in not granting appellant's motion for change of venue from the county. This was filed November 19, 1963. Appellant was arraigned October 8, 1962. It is claimed that the change of venue statute then in effect, being Burns' Ind. Stat., § 9-1305, 1956 Replacement, governed this matter rather than Supreme Court Rule 1-12C, which requires a defendant to file a motion for change of venue from the county within ten days after arraignment. The rule was adopted January 29, 1963, and became effective June 1, 1963.

It is to be noted that the motion was not sworn to by

appellant before a Notary Public. The statute requires an affidavit. The rule requires a verified application. We do not need to decide whether the rule or the statute applies in this case. The motion was unverified, and the court properly overruled it.

Appellant has filed *pro se* with this court what is designated as "Appellant's Petition to Inform the Court." This is a lengthy dissertation on the failure of his attorneys to represent him properly both in the trial court and on the appeal level, resulting in a charge of negligence and incompetency; that he did not have a fair trial; that Dorothy Andrews was guilty of perjury and suffering from insanity caused by use of narcotics; that he was refused bail; that the trial court refused to grant him a hearing on a writ of *habeas corpus;* that the trial court judge refused to appoint other attorneys for appellant, and the Attorney General refused to submit a copy of appellee's brief to appellant.

We have scrutinized these matters carefully in reviewing the trial of this case and find no grounds for this "Petition." Appellant received a fair trial, his attorneys have presented the best case they could for him, and he has had his day in court.

Judgment affirmed.

Arterburn, J., concurs. Jackson, J., dissents with opinion. Rakestraw, C. J., and Achor, J., not participating.

### DISSENT

JACKSON, J.—I am unable to agree with the conclusions and determination arrived at in the majority opinion and dissent thereto.

The evidence most favorable to the State, and the only evidence directly connecting appellant with the murder, comes from the testimony of the State's witness, Dorothy Andrews, in whose apartment the decedent, Charles Willie Mays, met his death.

The majority opinion recites the following pertinent facts:

"The record shows that Dorothy Andrews admitted on the witness stand that she was thirty years of age, that she had been a prostitute since she was twenty, that she was a narcotic addict since eighteen or nineteen years of age; that she had never been employed since leaving high school, that she had never had a legitimate source of livelihood since high school days in 1949; that she had been convicted of contributing to the delinquency of a minor in 1951; that she had been convicted of prostitution and obscene conduct in 1956 or 1957; that she had been convicted of public intoxication in 1955 and 1962; that she had been arrested for grand larceny in 1959."

The testimony of David Jeter, an Indianapolis policeman, was that on July 2, 1962, he in company with other officers were called to the apartment of Dorothy Andrews to investigate the death of Charles Willie Mays. The officer testified they questioned Miss Andrews about what had happened and checked the apartment thoroughly. On cross-examination, Lieutenant Jeter testified that a hypodermic needle, a spoon, a cooker type utensil that dope addicts use, and a syringe were found in the apartment and taken into custody. He stated that he saw the articles in the couch and bedding. There was fresh blood on the needle.

The testimony of Lieutenant Jeter was corroborated by the testimony of Detective Sergeant Leroy Callahan who testified that he was in the apartment at the time a bloody hypodermic needle, a cooker and a syringe were found.

The witness, Dorothy Andrews, also testified that she was in the apartment when a police officer found a bloody needle. She stated that the needle was hers and that she owned a cooker used for fixing narcotics.

Dorothy Andrews also testified that she had not discussed the case with anyone that morning, *i.e.*, the morning she testified. However, she did read her testimony of October 24th. She admitted that the questions and answers of October 24th had been supplied her by the prosecutor.

The appellant relies on the case of *Sylvester* v. *State* (1933), 205 Ind. 628, 187 N. E. 669, as authority to support his motion for new trial.

"The only evidence connecting appellant in any manner with the stolen automobile came from the mouth of a single witness. That witness, the admitted thief, admitted highway robber and admitted deserter from the navy, was, as to each of his material statements concerning appellant's connection with the stolen car, directly contradicted by himself under oath by disinterested witnesses, by circumstantial evidence, and by physical facts. We are not unmindful of the rule that errors of fact are for the trial court and errors of law are for the court having appellate jurisdiction, nor are we oblivious of the rule that a conviction may be sustained supported only by the evidence of an accomplice, but along with these rules is another, equally as important, requiring substantial evidence to support each fact essential to authorize a finding of guilty. This last rule places the evidence before the court on appeal, not for the purpose of weighing it, or for the purpose of determining the facts when there is actual conflict, but for the purpose of deciding, as a question of law, whether or not there is substantive evidence in support of the required material facts essential to a conviction. It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla. *Sullivan* v. *State* (1927), 200 Ind. 43, 47, 161 N. E. 265; *Cleveland, etc., Ry. Co.* v. *Wynant* (1893), 134 Ind. 681, 686, 34 N. E. 569.

"This court, for the past few years, has been confronted, as never before, with convictions resting entirely upon the testimony of criminals of the very worst type, and in a majority of these cases, before final disposition of them on appeal, our attention has been drawn to a petition for a writ of coram nobis based upon affidavits of the person or persons on whose testimony the conviction rested to the effect that their evidence given at the trial was wholly false and supplemented by a statement of alleged facts completely exonerating the defendant from criminality. In the instant case the reverse of the foregoing procedure took place below, but respect for the trust and the effect of an oath on the conscience of such a witness is the same. Experience admonishes us that convictions resting upon the testimony alone of witnesses of the character the one in this case is shown to have, should be carefully scrutinized, not only by the jury so instructed in this case, but by the court with the view of determining whether there was any substantial evidence before the jury to sustain each issuable fact. We use the word 'substantial' as meaning more than 'seeming or imaginary.' Whether the legally

admitted evidence may tend to establish facts from which guilt may be reasonably inferred is a question of law for the trial court when presented by a motion for a peremptory instruction in favor of the defendant at the close of the state's evidence, or at the close of the entire evidence, or by a motion for a new trial for insufficient evidence. The action of the court on any one of these motions may be saved and presented for review on appeal."

The record in this case discloses that the witness, Dorothy Andrews, is an admitted narcotic addict, such addiction having commenced when she was eighteen or nineteen years of age and continuing at least until the 24th of October, 1963, when she testified in a Habeas Corpus proceeding in connection with this case. At that time she was being held in jail for violation of a subpoena. She admitted that she was under the influence of narcotics when she went to jail. At the time she testified at the Habeas Corpus hearing she was experiencing withdrawal symptoms. She was later sent to the Marion County General Hospital for treatment. This was the witness in whose apartment Charles Willie Mays came to his death by a gunshot would. The testimony of this witness is contradictory and inconsistent from time to time and at variance with testimony she gave at the Habeas Corpus hearing.

The principle established in the *Sylvester* case, *supra*, is that a witness can be so disreputable that his credibility becomes a question of law for the court.

In the case at bar the uncontradicted facts are:

A. Charles Willie Mays was shot in the apartment of Miss Andrews;

B. Miss Andrews' character is questionable to say the least;

C. Miss Andrews is an admitted narcotic addict of years standing;

D. Miss Andrews' testimony implicating appellant in the death of Charles Willie Mays is completely uncorroborated;

E. That Miss Andrews and appellant were the only persons present in her apartment when decedent was shot.

In view of the facts and circumstances here existent the evidence is clearly insufficient to sustain the conviction. The judgment herein should be reversed, the cause remanded to the trial court with instructions to grant appellant's motion for a new trial.

NOTE.—Reported in 217 N. E. 2d 840.