422 N.E.2d 1218 (1981)
Kevin Eugene WASHINGTON, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 780S208.
Supreme Court of Indiana.
July 10, 1981.
*1219 J.J. Paul, III, Indianapolis, for appellant.
Linley E. Pearson, Atty. Gen., Michael Gene Worden, Dep. Atty. Gen., Indianapolis, for appellee.
HUNTER, Justice.
The defendant, Kevin Eugene Washington, was convicted by a jury of armed robbery, a class B felony, Ind. Code § 35-42-5-1 (Burns 1979 Repl.), and three counts of criminal confinement, class B felonies, Ind. Code § 35-42-3-3 (Burns 1979 Repl.). He was sentenced to terms of twelve years on the first count and six years on each of the other counts, all terms to be served consecutively. This direct appeal presents the following two issues:
1. Whether the trial court erred in admitting evidence of defendant's alleged involvement in a prior, unrelated crime; and
2. Whether the trial court erred in sentencing defendant to consecutive terms of imprisonment.
A summary of the facts most favorable to the state shows that at approximately 9:45 p.m. on August 13, 1979, an Arthur Treacher's Fish and Chips restaurant on the east side of Indianapolis, Indiana, was robbed by two black males. The manager of the restaurant, Claude Grissom, testified that two black men came into the restaurant just prior to closing, looked at the menu and ordered a seafood platter. When an employee rang up the order and asked for the money, one of the men pulled a gun and announced, "This is a robbery." Defendant then jumped over the counter and put a gun to the back of Grissom's head. He ordered Grissom not to look at his face. The robber ordered Grissom and Linda Gray, the other employee, to the walk-in freezer where a third employee, Debra Adams, was working. He ordered Gray and Adams into the freezer and took Grissom with him into the office. The robber took approximately six hundred dollars in cash from the office safe and ordered Grissom into the freezer with the other two employees before he left.
Grissom was not able to identify his assailant from a photo lineup prior to trial. He did identify defendant at the trial and said he looked the same except for his hair. Grissom also identified a photograph of the second robber, who later testified for the state. Debra Adams, one of the other employees present during the robbery, also testified at the trial. She corroborated Grissom's testimony about the events that night. She stated that she saw defendant only briefly at two separate times; once, when he first ordered his food and later when he came back to the freezer. She was able to identify defendant from a photo lineup and identified him at the trial.
Another state's witness, Diane McDowell, was allowed to testify over defendant's objections about the robbery of a different Arthur Treacher's restaurant where she was the manager. This robbery occurred five days prior to the instant crime. Defendant had entered that restaurant in the afternoon, looked at the menu and ordered *1220 a seafood platter. He ate it and waited until other customers left, then announced his intention to rob the business. McDowell testified that defendant held a gun to the back of her head and ordered her to open the safe and cash register so he could take the money. Both McDowell and another employee were forced to get under a desk before defendant left through a back door. McDowell identified defendant at a photo lineup and at the trial.

I.
Defendant now contends that the testimony about the prior robbery was improperly admitted since it was highly prejudicial and was not necessary for identification purposes. We do not agree.
It is well settled that evidence of other crimes committed by a defendant, separate and distinct from the instant charge, is generally inadmissible as proof of the guilt of the defendant. Henderson v. State, (1980) Ind., 403 N.E.2d 1088; Maldonado v. State, (1976) 265 Ind. 492, 355 N.E.2d 843; Cobbs v. State, (1975) 264 Ind. 60, 338 N.E.2d 632. However, there are certain exceptions to this general rule. Evidence of prior crimes can be admitted for the purpose of showing intent, motive, purpose, identification or common scheme or plan. Henderson v. State, supra; Choctaw v. State, (1979) Ind., 387 N.E.2d 1305.
Evidence of the prior robbery of a Steak and Ale restaurant was held admissible in Henderson v. State, supra. In that case, defendant was charged with the subsequent robbery of another Steak and Ale restaurant where he used the same pretense of seeking employment in order to gain entrance and the proximity in time was four days. Evidence of two prior robberies of the same store were held admissible as probative of common scheme and identity in Lockridge v. State, (1977) 172 Ind. App. 141, 359 N.E.2d 589. In a prosecution for theft of a television from a motel, the trial court admitted evidence of three other motel television thefts closely related in both time and distance in which defendant gave the same incorrect information on motel registration cards. The Court of Appeals affirmed. Alexander v. State, (1976) 167 Ind. App. 688, 340 N.E.2d 366.
In this case, the August 8 and August 13 robberies were quite similar. The proximity in time was five days. Both restaurants were on the east side of Indianapolis and were part of the same franchise with similar floor plans. In both instances, defendant came in posing as an ordinary customer and ordered a seafood platter. He then announced his intention to rob the business when no other customers were present. Defendant held his gun to the back of the manager's head in both crimes in order to obtain the cash from the office safe. These similarities are substantial and unique enough to be relevant in establishing identity. Henderson v. State, supra. The identity of the robber in the instant crime was not so firmly established by the testimony of the two eyewitnesses as to make this additional identification testimony unnecessary. The trial court did not err in admitting the evidence of the August 8, 1979 robbery.

II.
Defendant further contends that he was erroneously sentenced to serve consecutive sentences. He argues that the trial court did not make an adequate finding of aggravating circumstances to support the sentences and that under the circumstances of his case the consecutive sentences result in double punishment.
This Court has consistently held that it is proper to impose separate sentences upon multiple convictions when the offenses are not the same for purposes of double jeopardy. Adams v. State, (1979) Ind., 386 N.E.2d 657; Elmore v. State, (1978) 269 Ind. 532, 382 N.E.2d 893. Since the offenses in the instant case, namely the armed robbery of the restaurant and the criminal confinement of three different individuals, each require proof of an additional fact which the others do not, double jeopardy provisions are not violated and separate sentences were properly imposed for each.
*1221 The legislature has vested the trial court with the discretion to determine whether sentences are to run concurrently or consecutively in certain cases. Ind. Code § 35-50-1-2(a) (XX-XX-X-X(a), Burns 1979 Repl.). The legislature has further vested the trial court with the discretion to increase or decrease the basic sentence and has provided certain criteria for sentencing which must be considered by the trial judge as well as other factors which may be considered as mitigating or aggravating circumstances. Ind. Code § 35-4.1-4-7 (35-50-1A-7, Burns 1979 Repl.). We have consistently held that under our present sentencing statutes the alternative ways of increasing a particular sentence are not mutually exclusive. A court may, upon consideration of relevant facts and information, increase the basic penalties, impose consecutive sentences or both. Mott v. State, (1980) Ind., 402 N.E.2d 986; Inman v. State, (1979) Ind., 393 N.E.2d 767. In this case, it was clearly up to the discretion of the trial court whether to increase the basic penalties on the four counts, impose consecutive sentences or both.
It is also well settled that when a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record must disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The record must further show that the determination of the sentence was based upon a consideration of the facts of the specific crime and the relation of the sentence imposed to the objectives which will be served by that sentence. Abercrombie v. State, (1981) Ind., 417 N.E.2d 316; Gardner v. State, (1979) Ind., 388 N.E.2d 513.
In this case, the trial court found as aggravating circumstances the defendant's prior history of armed robbery from 1975, the seriousness of the crime and the fact that the victims were confined in a freezer. The court also commented that the use of a gun made this an especially serious crime since the victims "were exposed to looking down the barrel of a gun." The fact that the use of a weapon automatically raised the counts on confinement from class D to class B felonies does not preclude the court from also considering the manner in which the gun was used as an aggravating circumstance.
Defendant's sentence of thirty years was clearly within the limits of the discretion of the trial court and we find no abuse of this discretion. The trial court gave sufficient aggravating circumstances to support both the enhanced sentences and the imposition of consecutive terms. Under the circumstances of this case, we cannot say that the sentences are manifestly unreasonable. Ind.R.Ap.Rev.Sen. 2.
For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.
Judgment affirmed.
GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.
PRENTICE, J., concurs in result with Opinion.
PRENTICE, Justice, concurring in result.
I am of the opinion that we have gone astray in recent decisions wherein the State has been permitted to introduce evidence of other crimes or misdeeds by the accused upon the basis that such evidence was relevant to the identity of the perpetrator of the crime charged. There are very good reasons why substantial relevance should be required before permitting the introduction of such evidence. The general rule excluding such evidence, its purpose and its exceptions were articulated as follows by Justice Arterburn in Loveless v. State, (1960) 240 Ind. 534, 166 N.E.2d 864:
"The general rule is that one crime cannot be proved in order to establish another distinct crime even though they be of the same kind. Such evidence is highly prejudicial. Moreover, a defendant is entitled to be informed specifically of the crimes charged and not come to trial in the dark and uninformed as to the nature of the evidence to be presented *1222 against him. 1 Ewbank's Indiana Criminal Law, Symmes Ed., § 384, p. 236; Hergenrother v. State (1939), 215 Ind. 89, 18 N.E.2d 784; Sylvester v. State (1933), 205 Ind. 628, 187 N.E. 669; Fehlman v. State (1928), 199 Ind. 746, 161 N.E. 8. There are certain exceptions to this general rule. Among these are cases where a crime has certain peculiar characteristics connected with its commission so that it very reasonably identifies the person involved in the commission, as where, for example, a particular type of break-in is involved, or a particular tool used that is identifiable in each case, or where the person involved wears a particular identifying piece of clothing or headgear. Smith v. State (1939), 215 Ind. 629, 21 N.E.2d 709; Crickmore v. State, (1938), 213 Ind. 586, 12 N.E.2d 266; Zimmerman v. State (1921), 190 Ind. 537, 130 N.E. 235." 240 Ind. at 539, 166 N.E.2d 864.
In years past, such evidence has been admitted because there was something unique about the prior crime which also appeared in the crime for which the accused was on trial. More recently, it appears that we have lost sight of such factor and have permitted the evidence to be brought in merely upon a showing that the two crimes embodied similarities. We have lost sight of the importance of the aspect of uniqueness in making our determination of relevance. For example, I would not consider it significant if a bandit exited from the scene of both crimes in a white Ford automobile. I would have a different attitude if the vehicle utilized in both events were a pink Rolls-Royce. Although there is something to be said for the weight of greater numbers, I am of the opinion that we should not permit volume to be substituted for quality, when determining the relevance of such evidence.
In the case before us, I do not agree that the similarities in the two robberies rendered the testimony of Witness McDowell admissible for identification purposes. I agree that there were several similarities in the two crimes, but I do not agree that these similarities alone render it probable that the two crimes were committed by the same person or persons.
The similarities cited, for the most part, are merely characteristic of armed robberies of business establishments. There is nothing unique about a business establishment robber first posing as a customer, nor in his selecting, for the evil deed, a time when customers are unlikely to be present.
Had the robbers, in both incidents, ordered Tacos or Pizzas, I would be impressed; but I see nothing significant about ordering seafood in a seafood restaurant.
Should a robber take pains to assure that the victim can identify him, I would say that it was a unique circumstance. However, it is ordinary and, to me, of no significance when a robber takes pains to avoid his victim's obtaining a view of him. It also seems, today, that many robbers have no concern with whether or not their victims see them. Hence, I give no weight to the robber's having placed a gun at the back of the victim's head, as opposed to approaching him from the front. Neither do I regard it as significant that the robber commandeered money from the safe.
We are left with the nearness in time of the two events and the type of business establishment victimized as the significant factors tending to show that the two crimes were committed by the same person. In my opinion they are insufficient for that purpose.
Assuming that the evidence was admissible for identification purposes, however, it is immaterial whether it was necessary or merely cumulative. The majority opinion appears to suggest that the trial court may have been justified in admitting questionable evidence because the other identification testimony was weak. I believe this to be a better reason for excluding the evidence.
I, nevertheless, am of the opinion that the other evidence of the defendant's guilt was so substantial as to render the error harmless, and I vote to affirm the judgment.