Craig CHAPMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 52S00–8812–CR–973.

Supreme Court of Indiana.

July 18, 1990.

Caroline B. Briggs, Flora, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Robbery, a Class B felony, and Criminal Confinement, a Class B felony. He received a sentence of twenty (20) years on each count, with four (4) years suspended on condition of the repayment of $14,-000.

The facts are: At approximately 5:00 p.m. on May 29, 1987, a black man wearing a mask, sunglasses, a white-hooded sweat shirt, and Reebok tennis shoes entered the Wabash Valley Bank and Trust Company in Denver, Indiana. He had a gun in one hand and a bag in the other. He directed all the bank employees, except one, and the only customer present to lie on the floor.

Becky Wright, a bank teller, was required to fill the robber's bag with money. The robber then demanded more money, pointed the gun at the teller, and motioned toward the vault. The teller then entered the vault where she obtained more money for the robber.

Another teller, Susan Evans, had noticed a black man outside the bank shortly before the robbery and observed that the robber was the same height and build and was wearing the same type of clothing as the man she had seen outside. However, she was unable to discern the robber's facial features.

Several people had noticed a gold automobile with a black male passenger and a

white driver around Denver that day. Two other witnesses also identified appellant as the black man they had seen walking the streets earlier. One of those witnesses, Ed Click, testified that approximately a half hour before the robbery took place, he saw appellant walking down the street and observed him entering the gold automobile on the passenger side. It later was determined that the gold automobile referred to belonged to appellant's mother.

Thomas Pezet, who was a fellow security officer with appellant at Grissom Air Force Base, testified that appellant admitted his involvement in the Denver bank robbery and named fellow airman, Jack Wright, as his accomplice. A search of Wright's quarters produced bait money taken from the bank.

■ Appellant claims the trial court erred in refusing to grant a mistrial when the prosecutor in his closing argument asked the question, "[W]here's Jack Wright?" Both appellant and Wright had been charged with the crime; however, Wright had not yet been brought to trial. In the course of appellant's trial, the prosecuting attorney indicated that he was going to call Wright to the witness stand. Appellant's attorney objected on the ground that because Wright had not yet been tried he would only refuse to testify on the grounds that it might incriminate him and that such would be highly prejudicial to appellant.

After a lengthy conversation on this subject between the court and the attorneys, the trial court correctly ruled that the prosecutor would not be permitted to engage in such tactics. *See Tucker v. State* (1989), Ind., 534 N.E.2d 1110. There is no question that the comment of the prosecuting attorney was highly improper and had he pursued the matter any further a new trial would have been indicated. However, defense counsel immediately objected, and after a side-bar conference the court instructed the jury that they should disregard the comment of the prosecutor "and not consider it for any purpose in this trial."

■ Generally, an admonishment of the jury by the court is considered adequately curative. *Underwood v. State* (1989), Ind.,

535 N.E.2d 507, *cert. denied,* — U.S. —, 110 S.Ct. 257, 107 L.Ed.2d 206. In the case at bar, the jury was not privy to the conference between counsel and the court concerning the question of whether the State could call Wright as a witness. We do not perceive that the mere question by the prosecutor as to the whereabouts of Wright was so detrimental to appellant that the misconduct was not cured by the admonition of the trial court. We see no reversible error here.

Appellant contends the trial court erred in denying his motion to set aside the judgment and his motion to dismiss based upon alleged prosecutorial misconduct. Appellant's counsel perceived for the first time upon reading the presentence report that the State had withheld several significant exculpatory materials from the defendant in violation of a discovery order entered prior to trial. Among the things withheld were the names and addresses of witnesses and other persons who had been interrogated or detained by police in the course of their investigation.

■ Specifically, appellant complains that he was not furnished with the fact that Ed Click first had identified another gold automobile as the one he had seen appellant entering. Appellant claims that he should have been furnished with this information in order to more effectively cross-examine Click as to his accuracy and observation. However, the police report that discloses this information was made by Officer Roland, who was driving Click around town in an attempt to find the gold automobile.

It developed that a gold automobile was spotted, which Click thought might be the one, but it eventually turned out it was not. This hardly qualified as information that Click had at any time changed his story nor would it fall in the category of exculpatory evidence as far as appellant was concerned. We also would note that contrary to appellant's assertion that this first was learned upon reading the presentence investigation report, the record shows that during the examination of Click it clearly was brought

out that he had viewed at least two different cars in order to determine which car he had seen appellant enter.

■ Appellant also complains that the State did not disclose an interview with Joseph Charbonneau. At trial, Charbonneau testified that appellant owned a sweat shirt of the type described by the witnesses to the robbery. However, during the investigation, he had not been sure of whether it was the type of sweat shirt worn by the robber or whether it was a jacket.

The so-called information of which appellant claims he was deprived was a statement in an investigative report by FBI Special Agent Johnson, which contained the following:

"He [Charbonneau] is also aware that Chapman owns and often wears some type of a jacket or sweatshirt jacket which is white in color and has the words 'Kings' written across the front of the chest area. He has seen Chapman wear this jacket/sweatshirt on a number of occasions."

This language does not indicate that either Charbonneau or the agent were speaking of two different garments or that there was any doubt concerning the garment they were discussing. The language merely indicates a variance in terminology to describe the garment.

■ Appellant also contends non-disclosure of a report by Officer Roland concerning a black pickup truck. In Roland's report, he refers to an interview with a Dave Vitek, who stated, that while driving on the highway en route to Denver he heard a report of the robbery and he met a gold car fitting the radio description, which was being followed very closely by a black pickup truck. Although the gold car fit the description of the one involved, it was not determined that it was in fact the one and had it been so established, we fail to see how the fact that it was being followed closely by a pickup truck would in any way be exculpatory so far as appellant is concerned.

■ Appellant also claims there was exculpatory evidence withheld when he was not informed that the shoe print made by the robber on the bank counter did not match the shoes taken from him at the time of his arrest. At the post-trial hearing on appellant's motion, the prosecuting attorney informed the court that during the discovery process he took appellant's counsel to the State Police Post to go through the items concerning footprints. Counsel indicated that she did not want to go into the footprint question because she was aware that the shoes taken from appellant were those he was wearing when he was coming directly from the Twelve Mile bank robbery, which was another robbery not involved in the case at bar.

The fact that shoes being worn by appellant at the time of another robbery did not match the footprint left at the robbery in the instant case hardly can be viewed as exculpatory evidence. One cannot argue with defense counsel's choice not to go into the matter of what type of shoes appellant was wearing when he was arrested following another bank robbery.

Appellant also asserts the unfairness of the prosecuting attorney was demonstrated when an attempt was made to intimidate the family of Jack Wright, who had been subpoenaed to testify that Wright could not have been present during the robbery as he had been elsewhere. However, the members of Wright's family in fact did testify and the entire matter was presented to the jury for their determination.

We would further point out that this issue was not presented in the motion to correct error but is raised for the first time in appellant's brief. We see nothing here which would justify reversal of this case.

■ Appellant claims the trial court erred in failing to grant a mistrial during the testimony of Susan Evans. Evans testified that she had seen appellant outside the bank a few minutes before the robbery and that the robber was the same height and build and wore the same type clothing as the person she had seen outside the bank.

In addition, during her testimony, she said that she recognized the voice of appel-

lant. However, appellant objected to this testimony on the ground that at no time had Evans heard appellant speak since the robbery. The trial court sustained the objection, struck Evans' comment from the record and instructed the jury not to consider "that statement for any purpose in this trial." On further questioning of Evans, she stated that she was sure the man she had seen outside the bank was the robber. However, she also stated that she could not identify the robber.

When one examines Evans' testimony in its entirety, it becomes evident that at no time did she see the face of the robber to the extent that she was able to identify him by his facial features. The evidence placed before the jury was that, notwithstanding this lack of facial identification, she nevertheless believed that the person she had seen outside in fact was the person who robbed the bank.

The admonition of the trial judge for the jury to disregard her voice identification was sufficient. *Underwood, supra.* The balance of her testimony was submitted to the jury for their evaluation. This Court will not override the prerogative of the jury and attempt to weigh evidence. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

■ Appellant contends the trial court erred in refusing to give his Tendered Instruction No. 7, which was an instruction on circumstantial evidence. However, not all of the evidence submitted by the State was circumstantial. The testimony of Susan Evans that in her opinion the person she saw and could identify as appellant outside the bank shortly before the robbery was the same person who robbed the bank was direct evidence to be considered by the jury. The fact that she could not identify the face of the robber during the robbery does not render the evidence circumstantial. Her testimony comparing the robber to appellant was direct evidence to be weighed by the jury.

The State also presented the direct testimony of Thomas Pezet to whom appellant made a direct confession of the commission of the robbery. When evidence is not wholly circumstantial, the refusal of an instruction on circumstantial evidence is not error. *Armour v. State*, (1985), Ind., 479 N.E.2d 1294; *Murray v. State* (1985), Ind., 479 N.E.2d 1283. The trial court did not err in refusing to give appellant's Tendered Instruction 7.

■ Appellant claims there is insufficient evidence to support the conviction for criminal confinement. He takes the position that the robber did not directly order Becky Wright to go into the bank vault. Therefore, there was no evidence that he caused her removal from one position to another within the bank. However, the testimony of Wright was that the robber pointed the gun directly at her and told her to get more money and that as he so spoke he motioned toward the vault. The jury was entitled to interpret such testimony to support the conclusion that the robber did in fact order Wright into the vault to obtain more money and that she did so. The jury was justified in finding from this evidence that appellant in fact was guilty of confinement. *See Arnold v. State* (1987), Ind., 510 N.E.2d 167; *Anderson v. State* (1986), Ind., 499 N.E.2d 1133.

■ Appellant contends the trial court erred in restricting his cross-examination of State's witness Thomas Pezet. Appellant's counsel proposed to cross-examine Pezet to the effect that he did not make his statement until after his wife made an incriminating statement against him, which implicated him in a subsequent but related bank robbery. Counsel's stated purpose for such cross-examination was that Pezet was incriminating appellant only to obtain a favorable disposition of his own charges. The trial court excluded this testimony because it involved another bank robbery in which appellant also was involved.

The fact that Pezet was in trouble and conceivably could be attempting to extract himself from that trouble by testifying against appellant was disclosed to the jury. This possibility was covered fully by appellant's cross-examination of Pezet. In fact, appellant was benefitted by the exclusion of information from the jury which would have implicated him in the other bank rob-

bery. The fact that Pezet's self-interest in the matter was presented to the jury renders harmless any possible error in the excluding of the information concerning Pezet's wife's statements implicating him in a robbery. *See Smith v. State* (1968), 250 Ind. 125, 235 N.E.2d 177; *Anderson v. State* (1966), 247 Ind. 552, 217 N.E.2d 840.

■ Appellant claims that the misconduct of the prosecuting attorney on the closing statement and the withholding of exculpatory evidence, when taken together, combine to deny him a fair trial. This Court has held previously that trial irregularities which standing alone do not amount to error cannot gain stature of reversible error when taken together. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55.

■ Appellant contends the trial judge should have recused himself on the basis that his wife was employed in the Grissom Air Force Base office and that appellant was stationed at Grissom Air Force Base. He points out that the air force base had taken an active role in the investigation of the case. He takes the position that because the judge would be privy to information garnered through the investigation by base officials, this information might well influence the judge in rendering sentence against appellant. There is nothing in this record to indicate that anyone in the base commander's office had any interest in this case other than to cooperate with local authorities nor was there any indication that the trial judge's wife could have access to any information which was not presented at trial.

When appellant raised the question, the trial judge stated that he had not communicated with his wife or base officials concerning the case. In *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, *cert. denied* (1985), 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86, in a similar situation, we held that where there was no showing of a situation which would mandate the granting of a change of judge, we cannot find that the trial judge abused his discretion in denying appellant's motion for a change of judge.

■ Appellant contends the in-court identification of him was tainted because a folder of six photographs shown to witnesses prior to trial had appellant's photograph mounted directly on the backside of the face of the folder whereas the photographs of the other five subjects were attached to the inside of the back of the folder. However, upon examining this folder, this difference in the mounting of the photographs is not at all discernible so long as the folder remains closed and the photographs are viewed through the windows cut in the face of the folder. The difference is discernible only when the folder is opened.

Officer Roland, who was in charge of the viewing of the photographs, testified that the folder never was opened in the presence of the witnesses but remained closed throughout the identification process. Under such circumstances, we can see no evidence of undue suggestion concerning appellant's photograph. Appellant also claims that Officer Roland was guilty of misconduct in that he informed the witnesses which one of the photographs was that of appellant.

■ However, as pointed out by the State, the record discloses that Officer Roland made no such identification until after each of the witnesses had picked appellant's photograph. At that time, he did indicate to them that they had selected the photograph of appellant. The cases which have condemned undue comment by officers conducting a photographic lineup have found comments which accompany or precede the selection by the witnesses are improper. *See Peterson v. State* (1987), Ind., 514 N.E.2d 265; *Pettiford v. State* (1987), Ind., 506 N.E.2d 1088; *Popplewell v. State* (1978), 269 Ind. 323, 381 N.E.2d 79.

We cannot perceive how appellant could be harmed by witnesses being informed as to whether they had chosen appellant's photograph after having made a certain and unequivocal identification. Where pretrial identifications are not unduly suggestive, there is no error in refusing to suppress the in-court identification. *Williams v. State* (1984), Ind., 465 N.E.2d 1102. The

trial court did not err in refusing to suppress the evidence of identification.

 Appellant contends he was denied a fair trial due to undue and improper publicity within the county. He cites the following examples of unfair treatment: that the trial court allowed newspaper reporters to sit at a table in front of the bar opposite the jury and allowed them to enter and leave the courtroom at will; that the court repeatedly denied appellant's challenges to jurors who had been exposed to publicity relating to appellant's cases in either Cass or Miami Counties or who had knowledge of appellant's codefendant's case in Cass County or Miami County; and that by reason of these errors the court had erred in refusing to grant appellant's motion for change of venue.

The State first points out that appellant's motion for change of venue was not timely under Ind.R.Cr.P. 12, which requires that such motions be made within ten (10) days after a plea of not guilty. Appellant's plea of not guilty was entered July 23, 1987 and his motion for change of venue from the county was filed more than six months later on January 12, 1988.

Even if we would assume for the sake of argument that appellant had not learned of any of the publicity until January of 1988, we note that the rule also provides that the motion "shall be verified or accompanied by an affidavit signed by the Criminal Defendant or the Prosecuting Attorney setting forth facts in support of the statutory basis or bases for the change." There was no such verification or affidavit accompanying appellant's motion; thus the trial court did not err in denying the same. *See Jones v. State* (1988), Ind., 517 N.E.2d 405; *Johnson v. State* (1985), Ind., 472 N.E.2d 892; *Tabor v. State* (1984), Ind., 461 N.E.2d 118.

As to appellant's claim that it was error not to sequester the jury, this Court has held that in a non-capital case, sequestration of the jury is a matter within the discretion of the trial court. *Schweitzer v. State* (1989), Ind., 531 N.E.2d 1386. This Court also has held that "[t]o succeed in showing abuse of discretion, the defendant must show that the jurors were exposed to trial publicity or that they violated an admonition to refrain from viewing media coverage." *Id.* at 1389. There is no showing in this record by affidavit or otherwise that any juror violated the trial court's admonitions or that any member of the jury was exposed to media publicity after the trial started.

As to appellant's claim that the media should have been required to sit behind the bar, this Court has held previously that the manner in which trial is conducted, including the placement of persons, is a matter within the discretion of the trial court. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, *cert. denied* (1988), 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773; *Pitman v. State* (1982), Ind., 436 N.E.2d 74. There is nothing in this record to indicate any undue disturbance caused by any reporter. In fact, the indication from this record is that there was only one reporter in attendance at the trial. There is nothing in this record to indicate the trial judge abused his discretion in permitting the reporter to sit at a separate table inside the bar.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.